**M. B. SKINNER COMPANY, a division of Textron, Inc., a Rhode Island corporation, Appellant,**

v.

**CONTINENTAL INDUSTRIES, INC., an Oklahoma Corporation, Appellee.**

No. 7739.

United States Court of Appeals Tenth Circuit.

June 1, 1965.

Rehearing Denied July 2, 1965.

Charles J. Merriam, Chicago, Ill. (Eugene C. Knoblock, So. Bend, Ind., and Conner, Winters, Randolph & Ballaine, Tulsa, Okl., Zarlengo, Zarlengo & Seavy, Denver, Colo., and Merriam, Smith & Marshall, Chicago, Ill., of counsel, were with him on the brief), for appellant.

Richard B. McDermott, Tulsa, Okl. (Paul H. Johnson and Boesche, McDermott & Eskridge and Head & Johnson, Tulsa, Okl., of counsel, were with him on the brief), for appellee.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and DOYLE, District Judge.

LEWIS, Circuit Judge.

Appellant, M. B. Skinner Company, brought this action in the Northern District of Oklahoma against appellee Continental Industries, Inc., alleging infringement by Continental of appellant's patents 2,950,637 and 2,990,731, related to punching T-fittings primarily used for making service taps or connections to steel natural gas pipelines. Appellee denied infringement, claimed that the patents were invalid, and counterclaimed for a declaratory judgment to such effect. After a trial to the court, judgment favoring appellee on all issues was entered. Appellee's counsel thereafter prepared detailed findings of fact and conclusions of law, which the court adopted verbatim. From the judgment holding the patents invalid and not infringed appellant prosecutes this appeal.

Appellant's punching T-fitting, first embodied in its patent number 2,950,637, is designed to be secured at one end to the pipe to be tapped and to extend outward radially from the pipe. The punching element itself fits inside the T-fitting and has a threaded outer end and a punching tip at the inner end, with the threaded end fitting into the threaded interior of the T-fitting. Rotation of the punch causes it to advance at a rate determined by the thread pitch, and in so advancing it pushes the metal ahead of it, producing a metal coupon upon completion of the punch. The face of the punching tip is flat and oblique rather than being perpendicular to the axis of the punch. It is cut at a 15 degree angle, which was found to obtain the most efficient punching action.

The punch tip is smaller in diameter than the threaded part of the punching element. After the hole has been punched in the pipe, the tip is retracted by reverse threading to permit the gas to flow through the pipe hole. The threads on the opposite end of the fitting act as a seal against the escape of the gas from the pipe, leaving only the third member of the tee open for the passage of gas. The punch also has a tapered section between the tip and the threaded portion so that the flow of gas may be shut off by advancing the punch until the tapered portion is firmly seated in the hole; in this way the T-fitting may be used as a valve.

Appellant emphasizes the distinction between a punch and a drill. A punch such as appellant's involves the cold flow of metal and, like a paper punch, produces a coupon rather than shavings which would result from drilling. Punching which utilizes the cold flow of metals is a form of swaging. By punching, rather than drilling, appellant's T-fitting makes it possible to tap a pipe much faster than before and avoids the production of shavings, which are likely to cause trouble if they remain inside the pipe.

This first T-fitting was marketed by appellant in the first half of 1959 but was not entirely satisfactory. Because an oblique rather than perpendicular tip was used, the first contact made with the pipe by the tip was eccentric, rather than concentric, to the threaded portion of the punch. This caused the tip to wander somewhat from the axis of the punching element and sometimes to break. Also, on some occasions the coupon formed by the punching did not break entirely loose but remained hinged at the edge of the hole on the inside of the pipe, resulting in the possibility that it might subsequently swing back to obstruct the hole. Because of these shortcomings, appellant developed and marketed an improved punch, the subject of patent number 2,990,731, which had the same structure but a different punching tip. The tip on this punch is formed of two intersecting planes, with a central hole positioned axially of the punching element. The central hole and the two apexes, formed by the two points of intersection of the planes, keep the punch from wandering. The improved tip also solved the problem of the coupon not breaking completely loose from the inside wall of the pipe. This second punch accounts for the majority of appellant's sales and was found by the District Court to be "a useful device."

The accused punch marketed by appellee is similar in all respects to appellant's improved punch except that the tip is made up of three, rather than two, intersecting planes. There is no other important difference between the two punches. Both punches swage a hole in the pipe and both produce a coupon.

■ Preliminarily, appellant urges that our review of this case should be in the nature of a consideration de novo; that the findings of the district court should not receive the benefit of the clearly erroneous rule because such findings were prepared by counsel and adopted by the court without change; and further, that such findings were based in part upon the erroneous consideration of the testimony of a witness, a patent expert but not expert in the art, who was incompetent to testify but was allowed to testify to ultimate conclusions. We would consider such arguments to have merit only if the over-all record indicated an abandonment of the judicial process by delegation of the decision-making function to counsel and witness. Such is not this case, and although we do not commend the practice of the verbatim adoption of findings prepared by counsel,[1] such findings "are not to be rejected out-of-hand, and they will stand if supported by evidence." United States v. El Paso Natural Gas Co., 376 U.S. 651, at 656, 84 S.Ct. 1044 at 1047, 12 L.Ed.2d 12. Nor is it improper for the trier of the facts to consider the opinion evidence of an expert upon technical subjects, the value of such opinion being left to the sound discretion of the trial court in view of the qualifications of the expert. The judicial function requires an understanding of the case and the record here negatives an inference of inadequacy in such regard. See Lorenz v. General Steel Products Co., 5 Cir., 337 F.2d 726, 727 n. 3, and authorities there cited.

■■ Although this case is presented with the complexity typical in patent controversies, the critical finding of the trial court is that appellant's claims are premised upon an old and exhausted combination, thus indicating a primary appellate inquiry into the issue of validity, see Sears, Roebuck & Co. v. Jones, 10 Cir., 308 F.2d 705, cert. denied, 371 U.S. 952, 83 S.Ct. 509, 9 L.Ed.2d 501, which is ultimately a question of law for the court to decide. Mott Corp. v. Sunflower Industries, Inc., 10 Cir., 314 F.2d 872. The statutory test to determine validity is whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art * * *." 35 U.S.C. § 103. The statute presents an ultimate question of fact, and the trial court's finding of obviousness is safeguarded by the clearly erroneous rule so long as this ultimate factual conclusion was arrived at by consideration of proper legal criteria. Rule 52(a), Fed.R.Civ.P.; Admiral Corp. v. Zenith Radio Corp., 296 F.2d 708, 714; see Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 446, 44 S.Ct. 533, 68 L.Ed. 1098. And while a duly issued patent is presumed to be valid, 35 U.S.C. § 282; Bewal Inc. v. Minnesota Mining & Mfg. Co., 10 Cir., 292 F.2d 159, 163, this presumption is rebuttable, particularly where, as here, much of the prior art relied upon by appellee was not considered by the patent office. Admiral Corp. v. Zenith Radio Corp., supra, 296 F.2d at 712.

■ There is no single aspect of appellant's T-fittings that is totally new, with the possible exception of the punching tip which is different from the prior art relied upon by appellee and the patent office. Appellant's claims of invention therefore are based upon what is said to be a new combination of elements, and since it is a combination of old elements appellant must show both that it accomplishes a new and useful result and is inventive. Williams Iron Works Co. v. Hughes Tool Co., 10 Cir., 109 F.2d 500. A new application of an old device, or a

1. Roberts v. Ross, 3 Cir., 344 F.2d 747, decided April 29, 1965.

new combination of old elements, is by itself not patentable. 2 Deller's Walker on Patents, 2d Ed., p. 298; Admiral Corp. v. Zenith Radio Corp., supra, 296 F.2d at 213; Tropic-Aire Inc. v. Cullen-Thompson Motor Co., 10 Cir., 107 F.2d 671, 673. The standards of originality necessary to sustain a patent based upon a combination of old elements are properly burdensome. Ditto, Inc. v. Minnesota Mining & Mfg. Co., 8 Cir., 336 F.2d 67; John Deere Co. v. Graham, 8 Cir., 333 F.2d 529, cert. granted, 379 U.S. 956, 85 S.Ct. 652, 13 L.Ed.2d 553.

In reference to appellant's first patent, number 2,950,637, several of its aspects will be briefly evaluated. First, a branch or T-type fitting containing its own perforating element is not new; it was anticipated by, *inter alia*, McDonald original patent number 2,608,989, in 1952, and Webber, patent number 2,736,335, in 1956. The idea of punching rather than drilling a metal pipe is not inventive in and of itself, and in any case was done by McDonald, supra, and Hunter, patent number 2,660,192, in 1953. The principle of using cold flow swaging, producing a coupon after punching or cutting a hole in pipe, was anticipated by Alsaker, patent number 1,638,230, in 1927. The idea of an oblique end face appeared in Mercer, Australian patent 138,216, in 1947, in Pevey, patent number 2,606,615, in 1952, and in Dixon, patent number 2,251,701, in 1941. It is true, as appellant points out, that these latter patents all utilized the oblique face for a purpose other than punching, and that none of them had a flat unbroken surface. However, appellant's punching face is not a great variance of these earlier patents, and they would readily suggest it to one of ordinary skill in the art. See McCullough Tool Co. v. Well Surveys, Inc., 10 Cir., 343 F.2d 381; Admiral Corp. v. Zenith Radio Corp., supra. And since neither the Hunter, Webber, Alsaker, nor Dixon patents were considered by the patent office, the presumption of patent validity is greatly weakened. The District Court's finding that appellant's tee did not satisfy the requirements of section 103 was not clearly erroneous.

Much of what has been said about patent 2,950,637 applies to the second patent, number 2,990,731. The only question here concerns the different punching-tip configuration. The idea of a perforating tool with a hollowed end was used, *inter alia*, by Metz, patent number 1,020,302, in 1912, and by Alsaker, supra. The key to the punching tip, the formation by intersecting planes with a hollow tip, was used by Metz, supra, and shown by Alsaker, supra. Appellant complains that these inventions are different, since each design embodied more than two intersecting planes. However, a mere difference in the number of planes and corresponding apexes, if inventive, suggests severable patentability rather than combination; and, in any case, appellant was anticipated by Alsaker's statement that "while I have shown four such cutting edges, obviously a less or greater number might be employed without departing from the invention." This statement is of particular significance because the Alsaker patent was not considered by the patent office.

Certain nontechnical legal criteria may be properly considered in the test of patent validity [2] and appellant points with emphasis to evidence indicating commercial success of the subject pipe punch and to a long-felt need in the industry for the instrument. Such evidence may be considered as properly strengthening the presumption of validity but does not necessarily bridge the gap between mechanical skill and invention. Admiral Corp. v. Zenith Radio Corp., supra, 296 F.2d at 714; 2 Deller's Walker on Patents, 2d Ed., pp. 307 et seq. The plumbing industry is a crowded field having a continuing need for improved methods and the evidence of industry acceptance of appellant's T-fitting,

2. See Note, Subtests of "Nonobviousness"; A Nontechnical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169.

although ample to indicate a profitable enterprise, falls far short of general industrywide acceptance.

We conclude, therefore, that the District Court was correct in holding that appellant's patents are invalid. Since an invalid patent may not be infringed, it is unnecessary for us to consider the question of infringement. Consolidated Electrodynamics Corp. v. Midwestern Instruments, Inc., 10 Cir., 260 F.2d 811.

Affirmed.