**HETEROCHEMICAL CORPORATION,**
Plaintiff-Appellant,

v.

**UNITED STATES RUBBER COMPANY,**
Defendant-Appellee.

No. 15427.

United States Court of Appeals
Seventh Circuit.

Sept. 20, 1966.

Rehearing Denied Nov. 16, 1966.

Walter J. Blenko, Pittsburgh, Pa., Frank H. Marks, Chicago, Ill., Arland T. Stein, Pittsburgh, Pa., for plaintiff-appellant; Blenko, Hoopes, Leonard & Buell, Pittsburgh, Pa., S. J. Crumpacker, Crumpacker, May, Levy & Searer, South Bend, Ind., of counsel.

Theodore S. Kenyon, Francis T. Carr, New York City, George B. Newitt, Bair, Freeman & Molinaire, Chicago, Ill., for defendant-appellee; Malvin R. Mandelbaum, Kenneth E. Madsen, Kenyon & Kenyon, Ray K. Kuhns, Arthur, Dry, Kalish, Taylor & Wood, New York City, of counsel.

Before KNOCH, KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This is a patent infringement suit by Heterochemical Corporation, of Ohio, seeking an injunction and accounting against United States Rubber Company, of New Jersey. After Heterochemical filed notice of appeal from the district court's judgment against it, the patent expired so that the issue concerns only the question of damages for past infringement. We affirm.

TeGrotenhuis Patent No. 2,457,095 is concerned with synthetic rubber. Heterochemical, assignee of the patent, has no manufacturing plant and depends for revenue upon licensing of its patents. TeGrotenhuis, assignor of the patent, entered the rubber industry in 1933 in the employ of the Firestone Tire and Rubber Company. Inspired by the Firestone President's view that the rubber industry should rely on chemistry instead of machinery for the production of rubber, TeGrotenhuis attempted to find a chemical means whereby rubber could be made more processable, better and less expensive.

Between December, 1941, and October, 1944, TeGrotenhuis filed several patent applications relating to the subject matter of his experiments. As issued, the patent in suit bears filing date October 21, 1944. The original claims were rejected on May 17, 1945. Amendments

were filed November 13, 1945, and December 11, 1945. On November 13, 1946, the claims were again rejected, and further amendments were made between May, 1947, and September, 1948. The patent issued October 27, 1948. The patentee made further amendments to the title and specifications under Rule 78 of the Patent Office in November, 1948.[1]

The claimed invention, in the application as amended and issued, was a "polymeric composition and method of making same." In substance, its object was to provide an easily processable synthetic rubber with superior flexing resistance and low heat build-up as well as superior abrasion resistance.

The scientists of United States Rubber were doing research under the United States Office of Rubber Reserve while the TeGrotenhuis application was pending. Among other projects, they were engaged in the prime objective of the Office, the production of GR–S.[2] One of the chief problems they encountered was the processability of GR–S.

The first report on the experimental work of the scientists was published in December, 1944. It described a method of mechanically working GR–S by "hot plastication" to improve its processability.[3] Reports on further developments were made to the Office of Rubber Reserve in May, September and October, 1945, and February, June and August, 1946. These reports were summarized and published in December, 1946,[4] in an article describing the blending of latices and the use of a single reactor as two methods of improving processability.

In its Memorandum the district court rendered an opinion on what Heterochemical "posited" as the "real question" in the case, i. e., whether Heterochemical or United States Rubber came first with certain significant developments in the synthetic rubber manufacturing art.[5] In its Memorandum the district court accepted this as the real question and decided that the broadened claims in the issued patent included new matter, undisclosed in the original application. The court held the claims invalid and, accordingly, decided that United States Rubber came first. In this court Heterochemical posits the same "real question" as to who came first. This question, however, presupposes the substantial identity of the accused products or processes of United States Rubber with the invention disclosed in the claims in suit. Heterochemical also seeks to set aside the conclusion of the district court that there was no infringement.

We think the district court had substantial support in the record for the findings upon which it concluded that Heterochemical did not sustain its burden of proving infringement. Accordingly, we do not reach the contention that the district court erred in sustaining United States Rubber's affirmative defense that the claims in suit are invalid.

Because of the highly technical matters involved in this case, we think it necessary at the outset to set forth an explanation of the chemistry and process involved, as we understand them.

Latex is the basic raw material for making either natural or synthetic rub-

---

1. Now Rule 312, 37 C.F.R. § 1.312 (1960).

2. GR–S (Government Rubber Styrene) was the chief synthetic rubber made in the United States under the Rubber Reserve Program of World War II. It was virtually identical with a German development called Buna S, which was made from butadiene and styrene.

3. Vila, PLASTICATION AND PROCESSING OF GR-S, 36 INDUSTRIAL & ENGINEERING CHEMISTRY 1113 (1944).

4. Schoene, Greene, Burns & Vila, DEVELOPMENT OF A BETTER PROCESS-

ING GR-S, 38 INDUSTRIAL & ENGINEERING CHEMISTRY 1246 (1946).

5. Plaintiff's attorney in pre-trial conference stated to the district court: "We have an agreed fact, that a significant advance was made in the art, and that the real question for decision by this court is 'which of the parties was first?' If the plaintiff was first, then, judgment should be in favor of the plaintiff. If the defendant was first, then, judgment ought to be in favor of the defendant. * * * "

ber. It is an aqueous emulsion consisting of microscopic particles dispersed in water. Coagulation is the clotting together of the dispersed rubber globules to form a coherent irreversible jellylike mass. This is ordinarily accomplished by adding a chemical to the latex. The resulting mass, called coagulum or latex coagulum, is the starting point for the manufacture of commercial rubber. Mastication is the working or breaking down, by means of a special mill, of coagulum. Matrix describes generally a form in which one component exists in a chemical mixture. Polymerization is a chemical linking process during which monomers, "building block" molecules, react with each other to form chainlike molecules, called polymers. The chemical linking takes place by virtue of certain unstable characteristics in monomer components. The unstable characteristics of the principal types of monomers involved in this case result from their double bonds. The linkage is formed by one of these double bonds opening to accept bonds of other monomers. Should a second double bond thereafter react in the polymerization reaction with the double bond of a molecule in another chain, the result is termed a "cross-link" and the polymer molecule so formed is said to be "cross-linked."

The accused products of United States Rubber are known as Naugapol 1018, Paracril 2806, and Naugapol K–50. By agreement of the parties the determinative questions are the same for 1018 and 2806.[6] In its findings with respect to 1018 and 2806, the district court concluded that neither product embodies the "compositions or methods of the claims in suit." The findings supporting this proposition were, in substance, that 1018 and 2806 (whether in the state of latex, latex coagulum, masticated coagulum or the product as sold) are not comprised of a continuous phase or matrix having distributed within it particles of a relatively tough polymerization-cross-linked

product or of an unmasticated polymerization product. The court found that only a single polymerization reaction is involved in the preparation of the product, that the latex of each product contains only one type of particle and that, upon coagulation of the latices, there is no heterogeneous system in which relatively tough particles are distributed in a matrix. These findings distinguish the claims in suit.

Heterochemical argues that United States Rubber's single-reactor process was simply a "more convenient means" of obtaining the product disclosed by the claims in suit, i. e., a heterogeneous or two-phase product obtained by mixing separately prepared latices (or separately prepared latex coagulum or masticated coagulum). The rule set forth by plaintiff as applicable is that "one does not escape infringement by providing a single element which fully responds to a plurality of elements in the patent." Sears, Roebuck & Co. v. Delta Mfg. Co., 78 F.2d 745, 747 (7th Cir. 1935). This rule is inapposite to the facts before us, since the district court found that 1018 and 2806 differed not only in form but in substance. Flowers v. Austin-Western Co., 149 F.2d 955 (7th Cir. 1945); cf. Borg-Warner Corp. v. Mall Tool Co., 217 F.2d 850 (7th Cir. 1954).

We have found nothing in the record to indicate that this finding or those supporting it are clearly erroneous.

With respect to K–50, the district court found, in effect, that it did not infringe because it is neither rubber nor rubberlike and because the relatively highly cross-linked component is not the disperse phase of the admittedly two-phase material. At least one of these qualities is required by each of the claims which K–50 is alleged to infringe. There is substantial evidence in the record to support these findings.

Counsel for Heterochemical contends that the district court's findings of fact

6. The claims asserted against 1018 and 2806 are not identical, but the differences correspond to the use of acrylonitrile in 1018 and styrene in 2806 as one of the monomers, the other monomers in each case being butadiene and divinylbenzene.

"are entitled to little or no weight." As the basis for this contention, plaintiff states that the findings were "mechanically adopted" and do not "reveal the discerning line for decision of the basic issue in the case," and that this court is in as good a position as the trial court to examine and weigh documentary evidence.

After post-trial briefing and oral arguments, the district court invited findings and conclusions from both parties and ordered an exchange of the proposals, giving each party fifteen days to object to the proposal of the other with appropriate fact and law references. The court thereafter adopted the proposals of United States Rubber.

■■■ This court has termed the adoption of proposed findings a "practical and wise custom," in view of the obligation of a prevailing party to assist a busy court. In re Woodmar Realty Co., 307 F.2d 591, 594 (7th Cir. 1962). This is particularly true in a case where the evidence is highly technical, so long as the trial court's procedure is fair to both parties and the findings reveal insight and understanding of the basic issue. Schnell v. Allbright-Nell Co., 348 F.2d 444, 446 (7th Cir. 1965). In view of the district court's procedure in adopting findings of fact and conclusions of law, we are not persuaded that they were "mechanically adopted"; nor can we agree that they do not reveal insight and understanding of the basic issue. *Cf.* United States v. El Paso Natural Gas Co., 376 U.S. 651, 656–657, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). The district court was within its discretion in deciding not to construct its own findings and conclusions with respect to highly technical matters. The procedure used was neither unusual nor unfair. Therefore, in the absence of any specific attacks on these findings and conclusions, we will not decide that the district court abused its discretion upon the presumption that it deviated from its duty to weigh the evidence and adopt the findings and conclusions on the basis of its deliberations.

There are eighty-three formal findings of fact in support of the noninfringement conclusions of the district court. In this court plaintiff does not challenge these findings, with particularity, but relies upon the general statement that certain "admissions and formal reports seem to have been overlooked" by the district court. It argues generally that infringement was established beyond dispute by this evidence and that it falls within the "documentary rule" of this court, especially the "immediate real evidence" and defendant's *ante litem motam* reports. Heterochemical does not discuss the oral testimony or the conflicts which it contends render the findings in general clearly erroneous.[7] We are not persuaded by Heterochemical's presentation in this court that the district court erred in its conclusion, for it is clear from the findings that the court relied upon oral testimony as well as documentary and experimental evidence, and the court specifically found that plaintiff's reliance upon "admissions" in defendant's early reports is unfounded.

In its reply brief Heterochemical states that the lower court "virtually instructed" United States Rubber to ignore documentary evidence in preparing the findings, forbade Heterochemical to object to any findings on the ground of documentary evidence, and that a "mere scintilla" of evidence has overcome all of Heterochemical's documentary proof. We are referred to the court's Memorandum to support these statements.

---

7. The only documentary evidence specifically referred to consisted of the reports to the Office of Rubber Reserve and the articles published in *Industrial and Engineering Chemistry.* It is contended that they establish some elements of plaintiff's case, in their references to the predecessors of 1018 and 2806 as equivalent to a product made by blending two latices. The real evidence referred to consisted of samples of K–50 and a demonstration by plaintiff's expert, both purporting to show the flexibility of K–50.

We do not find justification for these statements in the Memorandum.[8]

We conclude that the district court's virtually unchallenged findings of fact, substantially supported by the evidence, justify the conclusion that United States Rubber was not guilty of infringing the claims in suit. We affirm the judgment of the district court on that conclusion alone. We have considered but need not and do not pass on the question of validity of the patent, nor need we discuss other points made.

Affirmed.

---

8. The court said, " * * * such objections, however, not to be predicated upon the weight of evidence or conflicts therein, but to be limited to an allegation that a proposed Finding or Conclusion was not supported by any evidence or was patently wrong or other related reason."