**J. D. BRADLEY, Appellant,**

v.

**MARYLAND CASUALTY COMPANY et al., Appellees.**

**No. 18486.**

United States Court of Appeals
Eighth Circuit.

Aug. 17, 1967.

John A. Biersmith, Kansas City, Mo., for appellant; Charles J. Fraas, Jr., and Rafter, Biersmith & Walsh, Kansas City, Mo., on the brief.

Henry G. Eager and Richard K. Andrews, Kansas City, Mo., for appellees; Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, Mo., on the brief.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

Plaintiff J. D. Bradley appeals from the district court's dismissal of all three counts of his second amended complaint.

These counts relate, respectively, to liability under construction contract payment bonds, breach of contract and quantum meruit.

In May 1960 bids were taken for the construction of 504 Capehart Act housing units at Whiteman Air Force Base, Missouri. On June 24 the United States accepted the bid of The Swartout Company (Swartout). The acceptance was conditioned, as usual, upon Swartout's executing the prescribed form of housing contract and furnishing performance and payment bonds as required by the Capehart Housing Act's § 403(a), 42 U.S.C. § 1594(a).

As early as June 16, 1960, Swartout and Del E. Webb Corporation (Webb) formed a joint venture for the project. This arrangement underwent changes but eventually specified that Webb would have the management of the venture and that Swartout could not commit beyond $1,000 without Webb's written consent.

On August 15, 1960, a framing or carpentry agreement was entered into between Webb, as contractor, and Swartout, as subcontractor. This was supported by a performance bond in favor of Webb and executed by Swartout, as principal, and Aetna Casualty & Surety Company and Continental Casualty Company, as sureties. On September 22 the housing contract for the units was executed between the government and the joint venture (rather than Swartout alone as successful bidder). This in turn was supported by three payment bonds executed by the joint venture and the parties thereto, as principals, and by Maryland Casualty Company, as surety.

In late December 1960 plaintiff Bradley and Swartout's president met and negotiated an agreement under which Bradley was to do certain framing work which was covered by the August 15 agreement between Webb and Swartout and which, by that agreement, Swartout was obligated to perform. This oral contract was later formalized by two letters dated, respectively, January 3 and January 10, 1961, from Swartout to Bradley. These letters provided that Bradley was to set up and oversee the framing operation. They also provided that Bradley was to receive $25 per unit, payable as each unit was ready for dry wall; plus half the excess, if any, of $1,100 over the unit cost of the framing operation; plus Bradley's expenses to and from Whiteman; plus one-third of the amount, if any, which the cost of material items, specified as "items (c) and (d) * * * set forth on sheet two of subcontract agreement between Del E. Webb Construction Co. and The Swartout Company dated August 15, 1960, being subcontract number 4782", proved to be less than $750,000.

In the first part of 1961 Bradley made trips to the jobsite and assisted in the preparation of drawings and material lists. He began framing operations in April. By May 26 framing was under way, but not completed, on 14 units; none of these, however, was ready for dry wall by that date.

On May 26 and again on June 1 Swartout notified Webb that its payroll account was depleted and that it was unable to meet its payroll. Webb thereupon defaulted Swartout and, with permission of Swartout's performance bond sureties, Aetna and Continental, assumed completion of the framing work. On May 27 Bradley came to the site and was told by Webb representatives that Webb would complete the work required by its contract with Swartout and would not require Bradley's services.

Chronological treatment of the lawsuit's development, to the extent pertinent to the appeal, affords perspective at this point:

1. In August 1962 Bradley filed his initial complaint in Missouri state court against Webb, Swartout and Maryland. The complaint was in two counts. The first was based on the three payment bonds. The second was against only Webb and Swartout for breach of contract.

2. Process was never served on Swartout. On October 29, 1962, Swartout appeared specially in the state court and moved to dismiss for lack of personal

jurisdiction. On the same date, on Webb's motion, filed pursuant to V.A. M.S. § 507.080 and Civil Rule 52.10, V.A. M.R., Aetna and Continental were joined as third-party defendants.

3. In November the two third-party defendants removed the case to the United States District Court for the Western District of Missouri. On February 5, 1963, Judge Gibson, then a district judge, dismissed the third-party petition with prejudice pursuant to a stipulation of compromise and settlement executed by Webb and the third-party defendants. Bradley moved to remand. Judge Gibson granted that motion on March 18, holding that there was an absence of "a separate and independent claim or cause of action", within the meaning of 28 U. S.C. § 1441(c). At the same time the court also vacated its order dismissing the third-party petition. Thus Aetna and Continental remained or at least were reinstated as parties to the litigation. On July 30, 1963, the state court, to which the case had been returned, sustained Swartout's motion to dismiss as to it for lack of jurisdiction.

4. This left in the litigation Bradley, a citizen of California; Webb, a citizen of Arizona; Maryland, a citizen of Maryland; Aetna, a citizen of Connecticut; and Continental, a citizen of Illinois. The dismissed defendant Swartout is a California citizen.

5. In August 1963 Webb and Maryland removed the case to federal court again. Bradley moved to remand for untimeliness and because the third-party defendants, Aetna and Continental, did not join in this second removal. Judge Gibson denied the remand motion.

6. In August 1964 an amended complaint was filed. This differed from the original only in the addition of J. D. Bradley, Inc., a California corporation, as a corporate plaintiff, and in an increase of the amount of the claim. It now appears to be conceded that J. D. Bradley, Inc. has no interest in the action.

7. On March 1, 1965, Webb and Maryland moved to dismiss the first, or payment bond, count of the amended complaint for lack of subject matter jurisdiction. This was based on the removal and the consequent derivative nature of the federal court's jurisdiction, and on this court's decision in Koppers Co. v. Continental Cas. Co., 337 F.2d 499 (8 Cir. 1964). Judge Gibson, on April 16, dismissed the first count.

8. In February 1966 the plaintiffs filed their second amended complaint. Its first two counts did not differ from those of the prior draft. This new draft contained, however, a third count in quantum meruit against Webb and Swartout and alleged that work had been subcontracted to Bradley by Swartout acting as agent for Webb.

9. The case went to trial on March 23 before Judge Hunter sitting without a jury. At trial plaintiffs' counsel contended, although Judge Gibson had dismissed the first count of the first amended complaint, that the plaintiffs were entitled to recover on the three payment bonds as contracts enforceable under the common law of Missouri. This, of course, was a theory which, if sound, would not founder on the limitations of federal court derivative jurisdiction.

10. On April 7, 1966, Judge Hunter, "for the purpose of clarification of the record", entered an order discharging and dismissing Webb and Maryland as to the first count; dismissing the third-party defendants Aetna and Continental, with prejudice, pursuant to the stipulation; and dismissing Swartout, with prejudice, pursuant to its motion and the state court order of July 30, 1963.

11. Judge Hunter's final judgment was entered May 12, 1966.

The issues raised on appeal concern the district court's (a) refusal to remand the second time; (b) trial of the case without a jury; (c) refusal to grant relief on the first count on common law grounds; (d) denial of relief on the breach of contract and quantum meruit counts; and (e) failure to exercise, in view of the authorship of its findings, conclusions and memorandum, "independent judicial determinations".

A. The refusal to remand. Bradley claims that Judge Gibson's refusal to remand the case the second time was error because only Webb and Maryland effected that removal and were not joined by Aetna and Continental as the statute, 28 U.S.C. § 1441(a), requires.

■■ Where several defendants are jointly sued in a state court on a joint cause of action, the suit, as a general rule, may not be removed to federal court on diversity grounds unless all the defendants join in the removal. Wright v. Missouri Pac. R.R., 98 F.2d 34, 35 (8 Cir. 1938); Interstate Bakeries Corp. v. McKee Baking Co., 248 F.Supp. 946, 947 (W.D.Mo.1965); Moosbrugger v. McGraw-Edison Co., 215 F.Supp. 486, 487 (D.Minn.1963); McMahan v. Fontenot, 212 F.Supp. 812, 814 (W.D.Ark.1963). See Chicago, R.I. & P. Ry. v. Martin, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); Gableman v. Peoria, D. & E. Ry., 179 U.S. 335, 337, 21 S.Ct. 171, 45 L.Ed. 220 (1900); Sheets v. Shamrock Oil & Gas Corp., 115 F.2d 880, 883 (5 Cir. 1940), aff'd 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); 1A Moore's Federal Practice (2d ed. 1965), par. 0.157 [7], p. 266, par. 0.161 [1], p. 522, par. 0.168 [3.-2], p. 1171. We recognize that there may be a trend toward restriction, rather than enlargement, of federal diversity jurisdiction. Young Spring & Wire Corp. v. American Guarantee & Liab. Ins. Co., 220 F.Supp. 222, 228 (W. D.Mo.1963), and that the removal statutes are to be strictly construed, Shamrock Oil & Gas Corp. v. Sheets, supra, pp. 108–109 of 313 U.S., 61 S.Ct. 868; Hoyt v. Sears, Roebuck & Co., 130 F.2d 636, 637 (9 Cir. 1942).

■ These pronouncements, however, are not absolute. We readily conclude that we would be interpreting and applying § 1441(a) in a hypertechnical and unrealistic manner were we to hold that the trial court erred in its refusal to remand. Aetna and Continental had been the moving parties on the first removal; their intent and action are thus self-evident. Further, the record contains a written stipulation between Webb, as third-party plaintiff, and Aetna and Continental, as third-party defendants, as to the compromise and settlement of the third-party action. No claim is made that this stipulation was ineffective as between its parties. For all practical purposes, Aetna and Continental went out of the lawsuit when that stipulation was executed. Their presence in the litigation had not been occasioned by Bradley and they were not indispensable parties with respect to Bradley. Their interest in the suit from that point on was a fragile one. They were then no more than nominal parties. And the presence of nominal or formal or unnecessary parties has no controlling significance for removal purposes. Salem Trust Co. v. Manufacturers' Fin. Co., 264 U.S. 182, 189–190, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867 (1924); Shattuck v. North British & Mercantile Ins. Co., 58 F. 609, 610 (8 Cir. 1893); Nunn v. Feltinton, 294 F.2d 450, 453 (5 Cir. 1961), cert. denied 369 U.S. 817, 82 S.Ct. 932, 8 L.Ed.2d 16; Stonybrook Tenants Ass'n v. Alpert, 194 F.Supp. 552, 556–557 (D.Conn.1961); 1A Moore's Federal Practice (2d ed. 1965), par. 0.161 [1], pp. 522–23, par. 0.161 [2], p. 530.

■ We hold that the district court's refusal to remand was correct.

B. The trial to the court. Rule 81 (c), Fed.R.Civ.P., contains provisions relating to demands for trial by jury when a case has been removed from state court.[1] The present form of that por-

---

1. Rule 81(c), Fed.R.Civ.P.
   "* * * If state law applicable in the court from which the case is removed does not require the parties to make express demands in order to claim trial by jury, they need not make demands after removal unless the court directs that they do so within a specified time if they desire to claim trial by jury. The court may make this direction on its own motion and shall do so as a matter of course at the request of any party. The failure of a party to make demand as directed constitutes a waiver by him of trial by jury."

tion of the rule quoted in the footnote became effective July 1, 1963. Prior to that date the rule was otherwise and required, after removal, a timely formal demand for a jury trial irrespective of state practice.[2]

We note again that the present action was commenced in August 1962. Webb and Maryland filed their separate answers in October. The first removal was in November. Under Rule 81(c) as it then read, Bradley, if he had a right to a jury trial and wanted it, was required to make his demand therefor within ten days of the removal. He made no such demand and his right was thereby waived. 7 Moore's Federal Practice (2d ed. 1966), par. 81.08, p. 4456.

But the case was remanded in March 1963 only to be removed again in the following August. This removal was after Rule 81(c) was amended. It is conceded that no written demand for a jury trial was made after this second removal. Webb asserts that at a February 11, 1966, pretrial conference before Judge Hunter, Bradley's counsel stated that a jury trial had been waived by Bradley so that the case was properly on the court calendar. In his reply brief Bradley's counsel states, "Frankly, we are unable to recall what was or was not said at any such conference". He points out, however, that in March 1966 he wrote Judge Hunter, "With respect to the discussion in your chambers last Friday as to the question of jury demand or waiver, I today find * * * that such a removal was not effected until August 6, 1963 * * * so that the failure after August to make an express demand would not constitute a waiver. * * * Should you in view of the above wish to reconsider the jury issue, I will of course, be available at your convenience". We find in the record submitted to us no further discussion of a jury trial and, taking counsel's letter to the court at face value, it

would appear that all parties, including the court, as late as March 18, 1966, regarded the case as one to be tried to the court.

We may assume, for present purposes, that the right to trial by jury in Missouri state practice is just as sacred as it is, by the Seventh Amendment and Rule 38(a), Fed.R.Civ.P., in federal practice. V.A.M.S.Const. art. 1, § 22(a); V.A.M.S. § 510.190, subd. 1; Civil Rule 69.01(a). We may also assume, for present purposes, that state law, applicable to the court from which this case was removed, does not require Bradley to make an express demand in order to claim trial by jury.

But we are not prepared to say that the loss of the right to a jury trial, when the case was in federal court on the first removal, by failure to make the timely demand required by former Rule 81(c); the representations made at pretrial before Judge Hunter; the long acceptance by all concerned that this was a case for the court; the failure of the court to direct a demand and of any party to request one; and Bradley's proceeding to trial without further motion or protest did not, as a matter of law, constitute a waiver by Bradley of the right, if any, he might have had to a jury trial on any issues in the case. We equate Bradley's argument on this point with an afterthought founded on a tardy awareness of the change in the federal rule made almost three years before. We hold that, under all the circumstances, Bradley had effectively waived a jury trial. See Kearney v. Case, 79 U.S. (12 Wall.) 275, 284, 20 L.Ed. 395 (1870); Smith v. Cushman Motor Works, Inc., 178 F.2d 953, 954 (8 Cir. 1950); West v. Devitt, 311 F.2d 787, 788 (8 Cir. 1963).

C. The common law contract cause of action. The first count of the original state court complaint plainly pleads a statutory cause of action against Webb,

---

2. "* * * If at the time of removal all necessary pleadings have been served, a party entitled to trial by jury under Rule 38 shall be accorded it, if his demand therefor is served within 10 days after the petition for removal is filed if he is the petitioner, or if he is not the petitioner within 10 days after service on him of the notice of filing the petition."

Swartout and Maryland upon the three Capehart payment bonds. It alleges the execution and delivery of these bonds "in compliance with the applicable portions of the [Capehart] Act and the terms and provisions of the Housing Contract" and that the bonds "were duly accepted by the United States of America, and by the obligees thereunder". On January 17, 1964, after the second removal to federal court, Webb and Maryland moved for the dismissal of the first count on the ground, among others, that the federal court had no derivative jurisdiction with respect to it. This was opposed by Bradley but not on any theory of a common law cause of action. The district court deferred decision by overruling the motion "at this time", subject to its entertaining again a motion to dismiss.

Then came our decision in Koppers Co. v. Continental Cas. Co., supra, 337 F.2d 499 (8 Cir. 1964), where we flatly held, pp. 506 and 501–502, that "Section 2(b) of the Miller Act, 40 U.S.C. § 270b(b), has application to a Capehart bond action and vests jurisdiction over that action exclusively in the federal court", and that the federal tribunal's derivative jurisdiction on removal "is no better than that possessed by the state court in which the action was begun".[3] Upon *Koppers'* authority, Webb and Maryland renewed their motion for dismissal. Judge Gibson, in granting this motion, noted, "Plaintiff does not contest that this decision controls and requires dismissal of Count I of the petition which is founded upon Capehart bonds and was originally brought in the" state court.

The second amended complaint thereafter filed contained the same first count. It was, in fact, a verbatim copy of it and did not amend or restate it in any way. Nothing was said as to any new theory on the first count at any pretrial conference. Only at the trial's opening statement did the plaintiffs suggest, as Judge Hunter described it, "that they were entitled to recover upon the bonds, not as statutory obligations, but as contractual

obligations enforceable under the common law of the State of Missouri". No move was made to amend the complaint or formally to reinstate the dismissed count. The court refused to permit the plaintiffs to proceed on the new theory and held that, in any event, the bonds were not to be construed and enforced under state common law.

Here, again, we feel that Bradley is endeavoring a rescue type of operation. Clearly, the count's effectiveness as a statutory cause of action is foreclosed by our decision in *Koppers*. Bradley conceded as much. But he would now revive the count on a new theory, without amended pleading and without notice to counsel or court until the opening statement at the trial. We hold that the first count in the second amended (and final form of the) complaint is one which, as in the original complaint, alleges only a statutory cause of action. The district court's denial of recovery on this count was correct.

This court's decision in United States for Use of W. B. Young Supply Co. v. Stewart, 288 F. 187 (8 Cir. 1923), cert. denied 263 U.S. 699, 44 S.Ct. 5, 68 L.Ed. 513, urged upon us by Bradley, does not have significance here. Our holding in that case was only that a surety's obligation is to be measured by the bond he executes and not by any separate and broader statutory undertaking of his principal.

D. The merits. The trial court found that Bradley, at the time he negotiated his Swartout agreement, reduced to writing in the letters of January 3 and January 10, 1961, saw the then existing framing agreement of August 15, 1960, between Webb, as contractor, and Swartout, as subcontractor; that Bradley read that agreement "with sufficient attention to identify material items (c) and (d)", which were on one of its pages and which were referred to in the letter of January 10; that Bradley then knew, from examining the subcontract, that Swartout was a subcontractor and that

---

3. Bradley's counsel on the present appeal was the prevailing counsel in *Koppers*.

it was contracting in that capacity with Bradley and thus was making Bradley only a sub-subcontractor; that Bradley knew that the framing operations referred to in the January letters were included in the work covered by the subcontract; that Bradley did not know that Webb had any part of the project until after the January 1961 letter agreements were made; that at least until May 26, 1961, Bradley looked solely to Swartout for compensation and did not expect to be paid by Webb or by the joint venture; that Webb did not request Bradley to furnish services or materials for the project; that Webb believed that Bradley had been hired by Swartout to assist that company in performing its work under the subcontract; that Swartout had no express, implied or apparent authority to contract with Bradley on behalf of the joint venture or of Webb for an obligation in excess of $1,000 without the written consent of Webb; and that such consent was not given and was not waived by Webb.

Bradley contends that when he negotiated his contract with Swartout the latter was acting as the agent of Webb and that, accordingly, Webb is liable to Bradley for his compensation. It is said that at the time of the January 1961 letters Webb and Swartout were joint venturers on the project; that under Missouri law they thereby in effect became partners; and that, although partners by agreement may limit the extent of the agency relationship between them, a third party is not bound by any such restriction without notice. Here, it is said, there was no such notice and thus Swartout's apparent authority to bind Webb is controlling.

There is no suggestion that Webb misled Bradley as to Swartout's authority or that Bradley relied to his detriment on Webb's involvement in the project.

■ Webb's liability to Bradley must rest on an agency relationship between Swartout and Webb in connection with the January 1961 letter agreements between Bradley and Swartout. It is most significant and persuasive that the letter of January 10 addressed to Bradley, specifically refers to two material items totaling $750,000 "on sheet two of subcontract agreement between" Webb and Swartout, "being subcontract number 4782". Bradley himself testified that he "could have arrived at this $750,000 figure by adding the $450,000 and $300,000 items as shown in the subcontract"; that "I presumed Swartout was a subcontractor under subcontract No. 4782 with Webb as the general contractor because that is what the letter agreement said; I had no cause to doubt it"; that even after he talked to Swartout's sureties "I was not looking to Webb for payment"; and that he saw a copy of the subcontract in December 1960 when Mr. Swartout showed it to him. Clearly, all this supports the trial court's finding that Bradley knew that Swartout was only a subcontractor for that part of the project in which Bradley was interested.

Bradley therefore fails in his quest for a contractual relationship with Webb and must look to Swartout for the compensation he claims is due him. This conclusion means, of course, that the quantum meruit third count, as well as the breach of contract second count, must fall. Kolb v. Howard Corp., 219 S.W.2d 856, 859 (Mo.App.1949).

E. The court's findings and conclusions. A final point is the assertion that it is apparent, from the typing in the original record, that counsel for the defendants were called upon by the trial court for aid in the preparation of its findings and conclusions. It is said that fairness and the minimum requirements of due process require that findings and conclusions be those of the court, not of counsel; that "they must be the independent and solitary decision of the judge"; that suggestions should be sought from all parties and not from one side only and without notice to the other; and that, except possibly for two retyped pages, even the court's supporting memorandum here was prepared by opposing counsel.

Rule 52(a), Fed.R.Civ.P., provides, "In all actions tried upon the facts without a jury * * * the court shall find the facts specifically and state separately its conclusions of law thereon * * *." It has been said that the purpose of this rule "is to require the trial judge to formulate and articulate" his findings and conclusions "as a part of his decision making process, so that he himself may be satisfied that he has dealt fully and properly with all the issues in the case before he decides it", and that findings and conclusions "prepared ex post facto by counsel, even though signed by the judge, do not serve adequately the function contemplated by the rule". Roberts v. Ross, 344 F.2d 747, 751–752 (3 Cir. 1965).

This court, on at least one occasion, has refused to disapprove of the practice of having proposed findings and conclusions prepared by prevailing counsel without notice to the other side. Miller v. Tilley, 178 F.2d 526, 528 (8 Cir. 1949). We there noted that the practice "is common and conventional in many jurisdictions" and that the trial judge "assumes full responsibility for the findings made or adopted".

In a recent antitrust case the Supreme Court had occasion to note and comment on this practice. It is apparent that the Court did not approve the practice but it concluded that such findings "though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence". United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964).

■ We apply this test to the findings and conclusions adopted by the district court in this case. When we do so, the present findings and conclusions, as were those in the *El Paso* case, are clearly supported by the evidence and are not vulnerable. They are drawn carefully, in detail, and in a professional manner, and they relate specifically to evidence in the record. This is not a situation where the

findings and conclusions are sketchy, or where the process of the court's reasoning is scarcely discernible, or where we might conclude, with justification, that the findings and conclusions are not the product of the court's own careful consideration of the evidence, of the witnesses, and of the entire case. We see no abandonment of the judicial process and certainly nothing which approaches the level of a deprival of constitutional due process. The findings and conclusions, accordingly, are entitled to their usual weight. M. B. Skinner Co. v. Continental Industries, Inc., 346 F.2d 170, 173 (10 Cir. 1965), cert. denied 383 U. S. 934, 86 S.Ct. 1062, 15 L.Ed.2d 851; Heterochemical Corp. v. United States Rubber Co., 368 F.2d 169, 172 (7 Cir. 1966).

A word as to the practice of having the court's opinion or supporting memorandum prepared by counsel is perhaps in order. This practice has been severely criticised as "the failure of the trial judge to perform his judicial function and when it occurs without notice to the opposing side, as in this case, it amounts to a denial of due process". Chicopee Mfg. Corp. v. Kendall Co., 288 F.2d 719, 724–725 (4 Cir. 1961), cert. denied 368 U.S. 825, 82 S.Ct. 44, 7 L.Ed.2d 29. The present record, however, is unclear as to just what did happen here and we are left with no more than thin inferences. In any event, the supporting memorandum, which blends into the conclusions, is a scholarly one and is carefully and intelligently drawn. We see no deprival of any constitutional right or anything which warrants reversal for this alone.

■ We venture to suggest that if, because of prevailing custom, or pressure of work, or a case's technical nature, or for other reasons, counsel must be asked to assist in the preparation of findings and conclusions, it is better practice to make this request at or soon after the submission of the case and prior to decision and to make it of both sides. 5 Moore's Federal Practice (2d ed. 1966), par. 52.06 [3], p. 2665. Then the court may pick and choose and temper and se-

lect those portions which better fit its own concept of the case.

Upon a detailed consideration of all the substantive and procedural aspects of this case, we are not persuaded that there was prejudicial error or that any miscarriage of justice has occurred.

Affirmed.