# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2016

_____

The Midwestern Indemnity Company

*Plaintiff - Appellee*

v.

Malissa Brooks; Bradley Brooks

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 13, 2015
Filed: March 2, 2015

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Malissa Brooks seeks to "stack"[1] her underinsured motorist (UIM) coverage limits after a negligent driver struck Brooks as she rode her bicycle. Her insurer, Midwestern Indemnity Company (Midwestern), moved for summary judgment on the basis that Brooks's policy unambiguously prohibits UIM coverage stacking. The district court[2] agreed and granted summary judgment in Midwestern's favor. Because Brooks's policy clearly forbids stacking, we affirm.[3]

## I.   BACKGROUND

### A.   Facts

On September 19, 2011, Brooks was riding her bicycle when Clyde Lawrence negligently struck her with his car. Lawrence afterward passed away of unrelated causes. Brooks and her husband, Bradley Brooks, filed suit in Missouri state court against Lawrence's estate (estate), which soon settled for the $50,000 limit of Lawrence's auto insurance policy. In this settlement, the Brookses agreed not to seek additional recovery from Lawrence's estate, heirs, or insurer, but the Brookses retained the right to seek recovery from Midwestern.

The Brookses' auto insurance policy with Midwestern provides UIM bodily injury coverage for several vehicles. On the declarations page for the UIM endorsement, the policy states, "Insurance is provided where a premium entry is

---

[1]As relevant here, "'[s]tacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury . . . from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009) (en banc) (quotation omitted). Although the Brookses sometimes refer to their five UIM "policies," there is actually only one policy with multiple covered vehicles.

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[3]Our appellate jurisdiction arises under 28 U.S.C. § 1291.

shown for the coverage." This page lists "Underinsured Motorist Bodily Injury" with liability limits of $100,000 per-person and $300,000 per-accident. Next to this, a premium amount appears for each of five vehicles, indicating the Brookses pay five UIM premiums for UIM coverage, one for each of the five vehicles. After the Brookses settled with the Lawrence estate, Midwestern paid the Brookses $100,000, declaring this per-person limit is the maximum amount for a single application of the policy's UIM coverage.

## B.     Procedure

In March 2013, Midwestern filed suit against the Brookses in federal court, seeking a judicial declaration that its UIM coverage limits for multiple vehicles do not stack to multiply the per-person limit. The Brookses moved to dismiss the federal case, contending their state suit against the estate (which had already been settled, but not dismissed from the state court's docket) was a "pending, parallel state proceeding encompass[ing] the same dispute at issue in" Midwestern's federal case.

In May 2013, before the district court ruled on this motion, the Brookses amended their state court complaint to add Midwestern as a defendant. Midwestern removed that suit to federal court, asserting diversity jurisdiction—both Brookses are Missouri citizens, and the parties all agree Midwestern is not. Midwestern contended that, although the estate was a named defendant, the court could ignore its Missouri citizenship and lack of consent to removal, because the settlement agreement between the Brookses and the estate extinguished all claims against the estate and Lawrence's heirs, leaving the estate with no real interest in the lawsuit. Although the Brookses contested the removal, the district court agreed with Midwestern, concluding that when the estate is ignored, complete diversity exists and removal was proper. The district court thereafter consolidated the two cases into the present action.

In this consolidated suit, Midwestern and the Brookses filed cross-motions for summary judgment on the stacking issue. Granting summary judgment in Midwestern's favor, the district court determined the plain language of the policy makes it "quite clear" intra-policy stacking is prohibited and the per-person limit for any one accident is $100,000.

## II.    DISCUSSION
### A.    Diversity Jurisdiction and Removal

The Brookses' initial argument rests on two facts: first, the estate, also a defendant, did not consent to removal; second, both the Brookses and the estate, by virtue of Lawrence's citizenship, are citizens of Missouri for purposes of diversity, see 28 U.S.C. § 1332(c)(2) (deeming estates to have the same state citizenship as decedents). The Brookses thus challenge removal and jurisdiction. See 28 U.S.C. §§ 1332(a)(1) (requiring diversity of citizenship); 1441(a) (requiring federal courts to have "original jurisdiction" for removal); 1446(b)(2)(A) (requiring all properly joined and served defendants to "join in or consent to the removal of the action").

Though we generally must look to *all* defendants in assessing diversity and consent to removal, "the presence of nominal or formal or unnecessary parties has no controlling significance for removal purposes," Bradley v. Md. Cas. Co., 382 F.2d 415, 419 (8th Cir. 1967), and "may be ignored in determining whether diversity jurisdiction exists," Slater v. Republic-Vanguard Ins. Co., 650 F.3d 1132, 1134 (8th Cir. 2011). In a classic enunciation of this rule, Justice Story wrote for the Supreme Court: "This Court will not suffer its jurisdiction to be ousted by the mere joinder or non-joinder of formal parties; but will rather proceed without them, and decide upon the merits of the case between the parties, *who have the real interests before it*, whenever it can be done without prejudice to the rights of others." Wormley v. Wormley, 21 U.S. (8 Wheat.) 421, 451 (1823) (emphasis added). A party therefore "'may be ignored'" for diversity and removal purposes if that party is not a "'real

party in interest.'" Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins., 675 F.3d 1095, 1098 (8th Cir. 2012) (quoting Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 404 (8th Cir. 1977)).

The Brookses maintain "the Estate . . . was not a nominal party . . . because the [UIM endorsement] required The Estate's presence in the litigation." The Brookses' only basis for this assertion is policy language requiring them to "exhaust[]" the underinsured motorist's liability coverage and prove they are "legally entitled" to recover from the motorist. Neither policy condition demands the estate's presence in the lawsuit, nor would the requirement of such a procedural formality give the estate any *real* interest in the dispute between the Brookses and Midwestern.

In Bradley, we addressed whether removal was proper despite the absence of consent from two third-party defendants when the parties to the third-party action all stipulated "as to the compromise and settlement of the third-party action." Bradley, 382 F.2d at 419. As then-Judge Blackmun wrote for the panel, the third-party defendants, "[f]or all practical purposes, . . . went out of the lawsuit when that stipulation was executed." Id. "Their interest in the suit from that point on was a fragile one," and were therefore ignored "for removal purposes." Id.; see also R.C. Wegman Constr. Co. v. Admiral Ins. Co., 629 F.3d 724, 726 (7th Cir. 2011) ("[A] party isn't permitted to destroy federal diversity jurisdiction by naming as a defendant someone against whom he does not seek relief." (citing Walden v. Skinner, 101 U.S. 577, 589 (1879))). The situation here is precisely the same: through the settlement, the Brookses waived all their claims against the estate and its insurer. We agree with the district court that "once the claims against [the estate] were settled the continuation of the suit against [it] was a nullity; the addition of Midwestern Indemnity was the equivalent of taking a new dispute against a new party and placing it in the shell that was the original suit against [the estate]." Thus, diversity jurisdiction exists and removal was proper.

## B.     Stacking

The Brookses argue the district court erred in reading their policy to limit their UIM coverage to $100,000, and the Brookses assert they should be permitted to stack the UIM coverage for their five covered vehicles.  We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the non-moving party—here, the Brookses.  See Moody v. Vozel, 771 F.3d 1093, 1096 (8th Cir. 2014).  "The parties and the district court agree Missouri law applies to this diversity action."  Crain v. State Farm Mut. Auto. Ins. Co., 744 F.3d 582, 583 n.1 (8th Cir. 2014).

As a matter of public policy, Missouri courts have invalidated "attempts by insurance companies to prohibit the stacking of *uninsured* motorist coverage."  Jordan v. Safeco Ins. Co. of Ill., 741 F.3d 882, 884 (8th Cir. 2014) (emphasis added).  But "[b]ecause Missouri does not require UIM coverage, 'the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer.'"  Daughhetee v. State Farm Mut. Auto. Ins. Co., 743 F.3d 1128, 1131 (8th Cir. 2014) (quoting Rodriguez v. Gen. Accident Ins. Co. of Am., 808 S.W.2d 379, 383 (Mo. 1991) (en banc)).  Consequently, "general rules of contract construction apply," and the "key" question is whether the policy unambiguously prohibits stacking *or* "is reasonably open to different constructions" as to the permissibility of stacking.  Id. at 1131-32 (quotations omitted).  If the former is true, we must enforce the contract to prohibit stacking; if the latter is true, the policy is ambiguous and we must construe the policy to permit stacking.  See id. at 1132.

The starting point here is the UIM endorsement's Limit of Liability provision, which states:

> **A.** *The Limit Of Liability shown* in the Schedule or *in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages*, including damages for care, loss of

services or death, *arising out of "bodily injury" sustained by any one person in any one accident.* Subject to this limit for each person, the Limit Of Liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

*This is the most we will pay regardless of the number of:*
1. "Insureds";
2. Claims made;
3. *Vehicles or premiums shown in the Schedule or in the Declarations*; or
4. Vehicles involved in the accident.

(Emphasis added). This language emphasizes that the $100,000 per-person limit shown on the declarations page is the most Midwestern covers for "'bodily injury' sustained *by any one person in any one accident*." (Emphasis added). In plain terms, the provision prohibits any attempt to stack these limits "regardless of the number of . . . Vehicles or premiums shown . . . in the Declarations."

Although this anti-stacking limitation is unambiguous, we have also said that "[i]f a policy has 'clauses that claim to prohibit stacking and *also* contain[s] clauses that appear to authorize stacking,' coverage is ambiguous and must be resolved in favor of the insured." Daughhetee, 743 F.3d at 1132 (emphasis added) (quoting Jordan, 741 F.3d at 885). We understand the Brookses to argue that elements of the UIM endorsement's declarations page "appear to authorize stacking," id., making the policy ambiguous on this point.

The declarations page reads, "Insurance is provided where a premium entry is shown for the coverage." Because a premium entry is shown for each of five vehicles, the Brookses maintain they were promised a stack of five UIM coverage limits for any single accident. In their view, the payment of an additional premium for each

additional vehicle must signify an increase in the coverage limit; otherwise, the Brookses believe, Midwestern is improperly charging them more in premiums despite providing no more coverage. As part of this argument, the Brookses contend that injuries to Brooks herself would also receive no *broader* coverage by adding more "covered autos"—she would be covered in whatever car she drives because UIM "'coverage is floating, personal accident insurance that follows the insured individual wherever [she] goes rather than insurance on a particular vehicle.'" (Quoting Fanning v. Progressive Nw. Ins. Co., 412 S.W.3d 360, 365 (Mo. Ct. App. 2013)).

In Missouri, "[i]nsurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. 2007) (en banc). "The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." Floyd-Tunnell v. Shelter Mut. Ins. Co., 439 S.W.3d 215, 221 (Mo. 2014) (en banc). "The 'declarations' are introductory only and subject to refinement and definition in the body of the policy."[4] Peters v. Farmers Ins. Co., 726 S.W.2d 749, 751 (Mo. 1987) (en banc).

In this case, the declarations page only indicates the vehicles for which "[i]nsurance is provided," giving readers no hint whether the indicated limits can be combined for a single accident. This is not enough, in view of the clear Limit of Liability provision, to create an ambiguity. The plain language of that anti-stacking

---

[4]At points, the Brookses suggest that to limit UIM coverage to $100,000, Midwestern would have had to include this limitation on the declarations page. But Missouri Supreme Court precedent shows a reader cannot rely on a declarations page to outline the precise scope of coverage. See, e.g., Floyd-Tunnell, 439 S.W.3d at 221. There is no requirement that a limitation or exclusion appear on the declarations page absent policy language stating otherwise. See Naeger v. Farmers Ins. Co., 436 S.W.3d 654, 660 (Mo. Ct. App. 2014).

provision must be offset by another provision "appear[ing] to *authorize* stacking," Daughhetee, 743 F.3d at 1132 (emphasis added), not simply failing to prohibit it. In Missouri, a policy is not ambiguous just because its broad statement of coverage is later cabined by policy definitions or exclusions, see Floyd-Tunnell, 439 S.W.3d at 221, and that is all the Limit of Liability provision does here. Seeing nothing on the declarations page which can be reasonably read to counter the Limit of Liability provision's anti-stacking mandate, we find no ambiguity.[5]

Nor is our conclusion altered by the Brookses' proposition that their additional premiums signify Midwestern is either overcharging them or implicitly promising a higher coverage limit. Our research has revealed no Missouri case allowing stacking solely because multiple premiums were paid. In fact, cases from the Missouri Court of Appeals suggest clear policy language controls even in such situations. See, e.g., Allstate Ins. Co. v. Miller, 425 S.W.3d 146, 146 (Mo. Ct. App. 2014) (per curiam) ("Miller argues that, because she paid two different premiums for underinsured motorists coverage on two different vehicles in a single policy, she should be entitled to recover up to the full limit of liability on each vehicle . . . . But because the policy

_____

[5]In the final pages of their brief, the Brookses compare the Other Insurance clause and the facts of this case to those in Jordan, 741 F.3d at 884, and emphasize that in Jordan, we applied the holding of Ritchie, 307 S.W.3d at 137-39, to read the policy as permitting stacking. The factual similarities between Jordan and this case do not imply the same conclusion where the legal issues and material facts are distinct. In Jordan, the parties agreed the policy's Other Insurance clause would make the policy ambiguous as to stacking and disagreed only as to whether the policy required the insured to occupy her vehicle—a question not in dispute here. See Jordan, 741 F.3d at 885. To the extent the Brookses contend the Other Insurance clause creates an ambiguity as to stacking, as in Ritchie, 307 S.W.3d at 138, the clause in the present case is readily distinguishable. Unlike Ritchie, see id. at 137, the Other Insurance clause here is expressly "[s]ubject to all other provisions of this policy, including" specifically "the Limit of Liability provision" prohibiting stacking. With this express limitation, the Other Insurance clause cannot reasonably be read to authorize stacking.

expressly and unambiguously disallows stacking, Miller's claim is without merit."); Hall v. Allstate Ins. Co., 407 S.W.3d 603, 610 (Mo. Ct. App. 2012) ("We . . . must evaluate policies as a whole, and read as a whole, the policy clearly, uniformly, and unambiguously prohibits stacking of [UIM] coverages, regardless of the number of cars insured or number of premiums paid.").

Contrary to the Brookses' assumptions, each premium *does* correspond with an increase in coverage. First, although UIM coverage generally "follows the insured," Fanning, 412 S.W.3d at 365, the Brookses' policy contains an owned vehicle exclusion, which restricts coverage from "following" Brooks when she drives a vehicle she owns but did not choose to cover with the UIM endorsement. The added premiums thus correspond with more owned cars in which Brooks's injuries are covered. Second, in addition to covering the named insureds and their family members, the UIM endorsement also covers bodily injury sustained by "*[a]ny other person* 'occupying' 'your covered auto.'" (Emphasis added). Payment for each additional "covered auto" buys coverage by the UIM endorsement for non-named, non-family passengers and drivers in that vehicle.

## III. CONCLUSION

The Brookses' UIM coverage in the Midwestern policy makes plain that stacking is prohibited. We affirm the district court's well-reasoned opinion and judgment.

_____