Application of the COMMITTEE OF IN-TERNS AND RESIDENTS, Petitioner,

v.

The NEW YORK STATE LABOR RELA-TIONS BOARD and Misericordia Hospi-tal Medical Center, Respondents, For an order and judgment to review and annul the determination of the respondent to dismiss the petition of the petitioner be-fore the respondent with respect to the house staff officers employed by and working at Misericordia Hospital Medi-cal Center and affiliated institutions, and for other appropriate relief.

Application of the COMMITTEE OF IN-TERNS AND RESIDENTS, Petitioner,

v.

The NEW YORK STATE LABOR RELA-TIONS BOARD, Respondent, For an or-der and judgment to review and null the determination of the respondent to dis-miss the petition of the petitioner with respect to the Clinical Fellows employed by and working at Albert Einstein Col-lege of Medicine and affiliated institu-tions, and for other appropriate relief.

Application of the COMMITTEE OF IN-TERNS AND RESIDENTS, Petitioner,

v.

The NEW YORK STATE LABOR RELA-TIONS BOARD et al., Respondents, For an order and judgment to review and annul the determination of the respon-dents to dismiss the petition of the peti-tioner before the respondents with re-spect to the house staff officers employed by and working at the Brookdale Hospi-tal Medical Center, the Catholic Medical Center of Brooklyn and Queens, Inc., Hospital for Joint Diseases and Medical Center, the Long Island Jewish-Hillside Medical Center, and their affiliated insti-tutions, and for other appropriate relief.

Nos. 76 Civ. 4098, 4117 and 4121–CLB.

United States District Court,
S. D. New York.

Sept. 28, 1976.

Murray A. Gordon, P. C. by Murray A. Gordon and Mark Kreitman, New York City, for petitioner.

Norbert M. Phillips, New York City, for respondent N. Y. State Labor Relations Bd.

Winer, Neuberger & Sive by Daniel Riesel and Gerald Bodner, New York City, for respondent Misericordia Hospital.

Raphael, Searles, Vischi, Scher, Glover & D'Elia by Michael Miglino, New York City, for respondent Brookdale Hospital Medical Center.

Guggenheimer & Untermyer by Robert E. Smith and Gerald D. Jacobson, New York City, for respondent Long Island Jewish Hospital.

Proskauer, Rose, Goetz & Mendelsohn by Warren J. Casey, New York City, for amicus curiae Hospital Association of New York State and the Greater New York Hospital Association.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

On August 30, 1976 the Committee of Interns and Residents ("CIR") commenced four separate proceedings in the New York State Supreme Court, New York County, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") to review and annul orders of the State Labor Relations Board ("State Board"). Three of these orders had dismissed charges of un-

fair labor practices brought by the CIR against Albert Einstein College of Medicine, Brookdale Hospital Medical Center and Long Island Jewish-Hillside Medical Center. The fourth order dismissed CIR's petition seeking certification as the collective bargaining agent for house staff at Misericordia Hospital Medical Center, sometimes referred to collectively as ("the Hospitals").

In these Article 78 proceedings, the only respondent named therein and served was the State Board. On September 8, 1976 the State Board moved in State Court to dismiss for want of merit. Before these motions could be heard, Albert Einstein College of Medicine, Brookdale Hospital Medical Center, Long Island Jewish-Hillside Medical Center and Misericordia Hospital Medical Center moved for leave to intervene in the state proceedings, pursuant to § 7802(d) of the CPLR. By a stipulation entered into in State Supreme Court on September 9, 1976, these Hospitals were each granted leave to intervene in the applicable Article 78 proceeding.

Thereafter, on September 15 and 16, 1976, the Hospitals filed petitions for removal of the respective Article 78 proceedings in which they had intervened. Thus three of the original Article 78 proceedings brought by the CIR have now been removed to this Court. A fourth proceeding involving an order of the State Board in connection with a dispute at Beth Israel Medical Center is still pending in State Supreme Court.

Upon the application of the CIR, this Court, on September 16, 1976, signed three orders requiring the petitioners for removal to show cause why these Article 78 proceedings should not be remanded to State Supreme Court. On September 17th, this Court heard oral argument on the three motions to remand. Post trial briefs have been received and considered.

CIR is an unincorporated association which includes among its members Interns, residents and clinical fellows engaged in the healing arts at various hospitals. All of these persons hold medical degrees, and render salaried professional care and other services, usually for a fixed period of time. These physicians, hereinafter for convenience, referred to collectively as "Housestaff", hope and expect that upon completion of their terms of service, they will have improved their medical skills, and in the case of fellows and residents, will have taken important steps toward accreditation in particular professional specialties, and subspecialties. Thus while Housestaff are probably employees in the common law sense, they also possess some characteristics of students.

Traditionally, and prior to August 1, 1974, the State Board treated Housestaff as employees of the voluntary and teaching hospitals and certified the CIR to act as a collective bargaining agent for them pursuant to the State of New York's statutory scheme for regulating labor relations of employers not covered by the National Labor Relations Act ("the federal Act"), 29 U.S.C. § 141, et seq. The state statutory scheme which is found in N.Y. Labor Law § 700, et seq., is modeled after the federal Act, and has been administered by the State Board for more than 39 years and is generally regarded as being in pari materia with the federal Act.

Effective August 1, 1974, the federal Act was amended so as to bring health care institutions within its coverage. 29 U.S.C. § 152(14). Following that date, and the commencement of federal regulation, an unusual situation arose with respect to Housestaff at private, non-profit teaching hospitals, such as the four intervenor hospitals. Beginning with the case of Cedars-Sinai Medical Center, 223 NLRB No. 57, 91 LRRM 1398 (1976), reconsideration denied, 224 NLRB No. 90 (1976), the National Board held that Housestaff were "students" rather than "employees' and that their membership organization was not a labor organization within the coverage of the federal Act. The holding in Cedars-Sinai has been followed by the National Board in every subsequent case involving Housestaff, usually with the simple statement that the personnel involved " . . . are not unlike those" in Cedars-Sinai. See

*St. Christopher's Hospital,* 223 NLRB No. 58, 91 LRRM 1417 (1976); *University of Chicago,* 223 NLRB No. 154, 92 LRRM 1039 (1976); *St. Clare's Hospital,* 223 NLRB No. 163, 92 LRRM 1001 (1976); *Buffalo General Hospital,* 224 NLRB No. 14, 92 LRRM 1379 (1976). Thus although the hospitals are now covered by the federal Act, they are not required by the NLRB decisions to engage in collective bargaining with Housestaff over wages, hours and other terms and conditions of employment, since the CIR is not a labor organization representing employees.

■ We observe at this time that in determining who is an employee within the coverage of the federal Act, the National Board's findings are entitled to great weight, and a court may not substitute its own factual inferences for that of the Board when the latter have support in the record. *National Labor Relations Board v. Hearst Publications, Inc.,* 322 U.S. 111, 130, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).[1]

Following the 1974 Amendments to the federal Act, and the aforementioned decisions by the NLRB, the State Board may have concluded that Congress had preempted the entire field of labor relations with respect to voluntary, non-profit hospitals. As we observe below, this is not entirely clear. In the decisions which prompted the CIR to bring these Article 78 proceedings, the State Board dismissed petitions apparently on jurisdictional grounds, citing federal preemption cases.[2]

The State Board's conclusion suggests several interesting questions: (1) is there federal preemption of the labor relations of Housestaff since the NLRB has determined that the Housestaff are paid students who work primarily to learn, rather than employees under § 2(3) of the federal Act; (2) is the NLRB correct in its conclusion that Housestaff are not such employees; and (3) a point not raised before the State Board, assuming no federal preemption as to Housestaff, because they are students and not

1. While the duties and privileges of Housestaff may differ between institutions so that the National Board would not necessarily be precluded from making different determinations after examining the facts of a particular case, this Court believes that the similarities outweigh the differences. Any hospital where housestaff would not at present be categorized as students under the holding of *Cedars-Sinai* and its progeny, might well be expected to alter the duties and privileges of its interns, etc., so as to bring them within the holding of those cases, and relieve itself from the necessity to engage in collective bargaining with housestaff.

2. The Misericordia decision of the State Board dated July 14, 1976 held in relevant part:

"In a similar representation proceeding, Cedars-Sinai Medical Center, above, the National Board held that interns, residents, and fellows are not 'employees' within the meaning of Section 2(3) of the National Act. [Footnote 6. The National Board has followed with several other decisions to the same effect. See, for example, *St. Christopher's Hospital for Children,* 223 NLRB No. 58; *University of Chicago,* 223 NLRB No. 154; *St. Clare's Hospital,* 223 NLRB No. 163; *Buffalo General Hospital,* 224 NLRB No. 17.] This Board has found otherwise as to Section 701(3) of the State Act during the period that non-profit making hospitals were under its jurisdiction. [Footnote 7. *Brooklyn Eye and Ear Hospital,* 32 SLRB 65, 67–75; *The Long*

*Island College Hospital,* 33 SLRB 161, 165–178; *Bronx Eye Infirmary, Inc.,* 33 SLRB 245, 247–250; *Wyckoff Heights Hospital,* 34 SLRB 625, 627–631.]

The question of possible state jurisdiction here is certainly not free from doubt. Cogent arguments can be, and have been made on both sides of the issue. [Footnote 8. Contrast the decisions of the United States Supreme Court in *Bethlehem Steel Company v. N.Y.S.L.R.B.,* 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, and *Lodge 76 International Association of Machinists and Aerospace Workers, AFL–CIO v. Wisconsin Employment Relations Board,* —— U.S. ——, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), all finding federal preemption, with its decisions in *Incres S.S. Co. v. Maritime Workers,* 372 U.S. 24, 83 S.Ct. 611, 9 L.Ed.2d 557; *Hanna Mining Co. v. District 2, Marine Engineers Beneficial Association, AFL–CIO,* 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d 254 (cited with approval in *Lodge 76, International Association of Machinists, etc., supra; De Canas v. Bica,* 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976) all sustaining State jurisdiction.] On balance, we have concluded that further processing of this matter before this Board is not warranted at this time. Accordingly, we shall dismiss the petition."

within the area sought to be regulated by Congress [according to the NLRB] should the State Board interpret the state statute, adapted from and *in pari materia* with the federal statute, so as to reach the same conclusion.

The applicable definition in the federal Act, which the NLRB held did not comprise Housestaff, is found in § 2(3), 29 U.S.C. § 152(3), and reads as follows:

"The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, . . . ."

The definition in the New York statute is found in § 701(3) of the New York Labor Law, which reads as follows:

"The term 'employees' includes but is not restricted to any individual employed by a labor organization; any individual whose employment has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment; and shall not be limited to the employees of a particular employer, unless the article explicitly states otherwise, . . . ."

■ Since the state statute was copied and adapted from the federal statute, the state legislature is presumed to have intended that the statute would have the same reach for employers not covered thereby as the federal statute would have had if applicable. This makes sense, because there are business entities outside the jurisdiction of the NLRB which compete with businesses which fall within its jurisdiction. Different standards would cause businessmen to warp their affairs unnaturally so as to assure that their labor relations would be under either state or federal

regulation, whichever might appear more advantageous. Since the two bodies of equal expertise are construing two almost identical statutes, there is every reason to believe that the State Board in future cases would follow the NLRB holding in *Cedars-Sinai, supra.*

■ Since the New York State Labor Relations Act is patterned after the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, the decisions on the national act are clearly apposite in cases involving the state statute. See *New York State Labor Relations Board v. Interborough News Co.,* 170 Misc. 347, 10 N.Y.S.2d 396 (1939).

■ And finally, a careful reading of the *Misericordia* decision, 39 SLRB 32, case SE–49745 (July 14, 1976), quoted in relevant part in fn. 2 hereof, reveals that the opinion does not necessarily appear to deny all relief because of federal preemption. After citing *Cedars-Sinai,* the State Board held "the question of possible *state jurisdiction* here is certainly not free from doubt." While the respondent Hospitals suggest that this is meant to be read as referring to preemption, the Court believes that the State Board is now prepared, assuming *Cedars-Sinai* and its progeny survive federal court review, to overrule its prior cases and proceed henceforth to construe the state act *in pari materia* with the federal Act, and to hold that Housestaff are students, not employees. When and if it does so, it will of course be applying state law. It is not for this Court to instruct the state officials that companion statutes derived from the same sources, directed at the same perceived needs, and enacted at about the same time, ought to be construed the same. No matter how simple and well-founded such a principle of statutory construction may be, the tradition of state-federal comity requires this Court to leave this matter of state law and state policy where it belongs, in the hands of the State Board and the Supreme Court of the State of New York. See *Association of Plumbing and Heating Contractors of Greater New York v. Merten,* 173

Misc. 448, 17 N.Y.S.2d 828 (1940), *aff'd*, 261 App.Div. 543, 26 N.Y.S.2d 72 (1st Dept. 1941), *aff'd without opinion*, 288 N.Y. 555, 42 N.E.2d 16 (1942).

I

In seeking remand pursuant to 28 U.S.C. § 1447(c), CIR has asserted a number of grounds, only two of which require discussion. The most significant contention is that the petitions in the Article 78 proceedings do not state claims "arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b).

 In order to invoke the original jurisdiction of the federal courts, the claim or right arising under federal law must appear well-pleaded from the complaint. *Louisville & Nashville Railway Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). This same principle applies to cases which have been removed, since removal jurisdiction is keyed to original jurisdiction. *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894). Thus there can be no removal on the basis of a federal question asserted for the first time in defendant's answer or petition for removal. *Great Northern Ry. Co. v. Alexander (Hall's Adm'r)*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918). These principles were succinctly summarized in *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936), which holds:

"To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element and an essential one of the plaintiff's cause of action. . . . The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction and defeated if they receive another. . . . A genuine and present controversy not merely a possible or conjectural one, must exist with reference thereto . . . , and the controversy must be disclosed on the face of the complaint, unaided by the answer or the petition for removal."

 These principles in themselves require remand. Of course it is possible that substantial federal questions may have to be decided by state judges before these Article 78 proceedings may be disposed of on the merits. Whether the 1974 Amendments to the Labor-Management Relations Act preempted the State Board from asserting jurisdiction over private, non-profit hospitals as to their relationships with persons ("students") not covered by the federal Act may require consideration. However, no federal question or claim is stated in CIR's Article 78 petitions, which show clearly that the action is founded and based upon the State Labor Relations Act, N.Y. Labor Law, § 700, *et seq.* The petitions seek to review and annul certain decisions by the State Board, as incorrect, arbitrary, capricious, and an abuse of discretion, and urge the Court to direct and order the State Board to act affirmatively with respect to the CIR and the Hospitals. In sum, the CIR seeks to have the Court order the State Board to act in compliance with its responsibilities under the state regulatory scheme. The State Board bears no federal regulatory obligations. While this Court understands the issue of federal preemption will be argued as a *defense* to the claims asserted in the Article 78 petitions, this fact is not a sufficient basis upon which to support federal jurisdiction.

The Hospitals point to paragraph 14(a) of the Article 78 petitions and contend that the CIR has in fact stated a claim arising under federal law. That paragraph pleads:

"14. The action of the SLRB as aforesaid was arbitrary, unreasonable, unlawful, and in excess and default of its jurisdiction in that:

A. It was contrary to and in violation of applicable provisions of the *Constitution, laws, and statutes* of the State of New York *and of the United States*." (Emphasis added.)

The Court regards this particular allegation as mere surplusage, having no independent meaning or basis, unless every litigat-

ed matter is to be regarded as raising a question of substantive due process. If the petitions rely on that allegation, they state no claim. CIR's petition is inartful in raising such questions, and such claims do not go to the substance of the relief which it is seeking in the Article 78 proceeding.[3] We disregard these infelicitous phrases and conclude that the petition seeks nothing more than to review a decision of the State Board interpreting and/or applying or refusing to apply a state statute.[4]

The Intervenor-Hospitals also rely on *State of New York v. Local 144,* 410 F.Supp. 225 (S.D.N.Y.1976). In that case the State of New York sought to enjoin a threatened strike against nursing homes, basing its complaint in state court upon its power to protect the health and welfare of its citizens. The 1974 Amendments to the federal Act clearly covered both the nursing homes, and the employees who were threatening to strike. While the State's complaint in that case was particularly artful, the district court correctly perceived that what was at stake was the right to strike, which under the circumstances of that case, was a federally-protected right. Here no federal claims or rights are raised by the CIR's petitions in the Article 78 proceedings. Furthermore, under *Cedars-Sinai,* Housestaff are not employees under the federal Act, and it has recently been held that for this reason disputes between Housestaff and voluntary hospitals are outside of the NLRB's jurisdiction. *Kansas City General Hospital,* 225 NLRB No. 13, 92 LRRM 1379 (June 24, 1976).[5]

3. If CIR were in fact seeking to enforce a federal right there would be no need to petition the State Board. No federal statute or provision of the Constitution is found which *requires* the State Board to grant any affirmative relief to CIR.

4. Should the Supreme Court in these proceedings following remand, determine the issue on the theory of federal preemption, rather than as a matter involving construction of the state law, which this Court really considers it to be, an appeal to the Supreme Court of the United States from the New York Court of Appeals will lie following exhaustion of state appeals. See *Tang v. Appellate Division of New York*

## II

Were we to agree with the Intervenor-Hospitals and rule that the Article 78 petitions stated claims arising under federal law, CIR's motion to remand would have to be granted on an additional independent ground. It is well-settled that all defendants who have been served in a state court action must join in a petition for removal. While the statute governing the procedure on removal reads simply that a petition may be filed by "[a] defendant or defendants desiring to remove . . .," 28 U.S.C. § 1446(a), courts have treated all defendants collectively and have established a general rule that all defendants who have been served in the state court proceeding must join in the removal petition. *Chicago, Rock Island & Pacific Railway Co. v. Martin,* 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *Bradford v. Harding,* 284 F.2d 307, 309 (2d Cir. 1960); *Maybruck v. Haim,* 290 F.Supp. 721 (S.D.N.Y.1968). See also, *In re Franklin National Bank Securities Litigation,* 532 F.2d 842, 846 (2d Cir. 1976); 1A *Moore's Federal Practice,* ¶ 0.168[3–.2]; *Perrin v. Walker,* 385 F.Supp. 945 (E.D.Ill.1974).

Before plaintiff's choice of the state forum can be avoided, unanimity among all defendants entitled to remove is required. Since the State Board has not joined in any of the petitions for removal, these petitions are defective and it appears for that reason alone that the cases were improvidently removed from state court.

The Hospitals seek to avoid this result in two separate ways. First they urge that the Court should realign the State

*Supreme Court, First Department,* 487 F.2d 138, 141, n. 3 (2d Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974) holding: "State courts are of course competent to adjudicate questions of federal constitutional rights." That Court noted further that "[i]n the event that [appellant] was unsuccessful he would have been assured of a direct appeal to the United States Supreme Court." Id. at 141.

5. Indeed, in *Kansas City General,* the NLRB also held that voluntary hospitals which had been brought within the federal Act by the 1974 Amendments were not employers within the meaning of § 2(2) of the Act for the purpose of any disputes relating to Housestaff.

Board as a party plaintiff in these actions, since its real interests are more in accord with what the CIR is seeking than with the defendants. Failing this, they seek to have the Court denominate the State Board as merely a formal or nominal party to these actions so that under a well-recognized exception to the general rule, the State Board need not join in the removal petitions.

The Court has examined the underlying substantive interests of the parties to the dispute in accordance with *City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941) and concludes that the State Board is properly aligned as a defendant-respondent in the Article 78 proceedings. These proceedings were brought to force the State Board to take a desired action, after it had declined to do so. The Hospitals contend that the State Board's real interest is to assert jurisdiction, since every administrative agency or bureaucracy naturally seeks to protect its existing business, to expand upon it where possible, and to increase its own size, importance and cost. But the State Board's real interest here, as in every case before it, is to comply with the legislative mandate and to carry out its duties as the administrative agency charged with the enforcement of the state statute. If, as happened here, the State Board decides that it should not act, that decision must be regarded as final and binding upon the Board in any litigation arising out of that decision, unless and until a court rules otherwise. That decision stands as the Board's own view of the matters and this Court cannot speculate upon the subjective desires of the State Board.

The pleading of the respondent State Board, entitled "Respondent SLRB's Motion to Dismiss and Affirmation", filed in all four state court proceedings, clearly shows its position, which was reiterated by its attorney of record in the hearing before me upon the return of these orders to show cause. That position is that the State Board stands upon its decisions, and affirmatively seeks that the proceedings be dismissed on the merits. The position of the State Board is not to be tested by the number of pages in its responsive pleading. The attorney for the Board has a duty to attempt to sustain its position before the Court, and he is performing that duty. I cannot and do not regard the Board's pleading as sham, frivolous or even insincere. Unlike the Solicitor General of the United States, who has been known to confess error in the Supreme Court, the attorneys for State Boards and Officers, seldom do so. The Court rejects any suggestion, implied at the hearing, that these state officials are so devious as to decide an issue against an applicant seeking an administrative remedy, solely for the purpose of obtaining a decision from a Court to the effect that they are wrong. To realign the parties it would have to appear that this was what they did.

Furthermore, the State Board is an important and indeed an indispensable party to this litigation. Its presence is no mere formality. Any court adjudicating the correctness of the decisions of an administrative agency certainly must consider the views of that body in its area of special expertise. By its decisions the State Board has aligned itself clearly with the Hospitals. *Glenmede Trust Co. v. Dow Chemical Company,* 384 F.Supp. 423 (E.D.Pa.1974). Upon the entire record it is clear that the State Board is not merely a nominal or formal party to the litigation.

For the reasons stated above, the CIR's motions to remand all three actions are granted.

So Ordered.