**IRVING TRUST COMPANY, Plaintiff,**

v.

**CENTURY EXPORT & IMPORT, S.A., Century Commodities, Inc., and Harry Steinfeld, Defendants.**

**Banco de Colombia, Intervenor,**

and

**Eduardo Ospina Fernandez, Individually and on behalf of Century Export & Import, S.A., Intervenor.**

**78 Civ. 1288–CSH.**

United States District Court, S. D. New York.

Jan. 31, 1979.

erty for Levees: A Louisiana Study in Taking without Just Compensation."

Krause, Hirsch & Gross, New York City, for plaintiff.

Coudert Brothers, New York City, for intervenor Banco de Colombia.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Century Export & Import S. A. and Intervenor Eduardo Ospina Fernandez.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This litigation, started in state court and removed pursuant to 28 U.S.C. § 1441, raises substantial questions concerning this Court's jurisdiction under the removal statute and the removing party's compliance with statutory conditions precedent to removal. The right of removal is a matter of legislative grace, *Great No. Ry. Co. v. Alexander*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1914); *Martin v. Hunter's Lessee*, 1 Wheat. 304, 14 U.S. 304, 4 L.Ed. 97 (1816), and Congress has directed that:

> "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court *shall* remand the case . . . .." 28 U.S.C. § 1447(c) (emphasis added).

Accordingly, although none of the parties to this litigation has moved for a remand[1] (indeed they urge that removal was proper here), I must, on my own motion, inquire into the questions of subject matter jurisdiction and the propriety of the removal. *Nixon v. O'Callaghan*, 392 F.Supp. 1081

---

1. The relevant facts are not in dispute and the parties have been afforded an opportunity to brief the issues.

(S.D.N.Y.1975); see 1A Moore, *Federal Practice*, ¶ 0.157[11] at p. 136 (2d ed. 1974). While resolution of these issues is not altogether free of doubt, I have concluded that the case should be remanded. My analysis begins with a summary of the proceedings to date.

## I.

Plaintiff Irving Trust Company, a New York corporation with its principal place of business in New York, brought suit in New York State court against three defendants: (1) Century Export & Import, S.A. (CEI), a Panamanian corporation whose principal place of business is Colombia; (2) Century Commodities Inc. (CCC), a New York corporation with its principal place of business in New York; and (3) Harry Steinfeld, a citizen and resident of New York. Irving Trust's complaint sought damages for breach of contract: counts 1 through 16 alleged claims against CEI as the "maker" of a series of unpaid demand notes[2] executed "to the order of Irving Trust" and held by Irving Trust; counts 17 and 18 alleged claims against CCC, as guarantor of the CEI debts referred to above, pursuant to a contract of guaranty between CCC and Irving Trust; counts 19 and 20 alleged claims against Harry Steinfeld, as guarantor, similar to those asserted against CCC.[3]

The opening gambit in the state court litigation was Irving Trust's request for an order to show cause for a temporary restraining order. Irving sought to "restrain itself" from honoring a certificate of deposit (the Certificate) in the amount of $1 million issued by Irving to CEI, and further requested an order of attachment, see N.Y. C.P.L.R. §§ 6201, 6212(a), with respect to the Certificate proceeds, i. e. the $1 million which CEI had deposited in return for the Certificate. Irving hoped to freeze these proceeds pending the outcome of the litigation so that it could eventually apply them in satisfaction of CEI's debt.

In response to Irving's complaint, Steinfeld filed an answer, ostensibly on behalf of all three defendants, admitting liability for the debts but contesting the fee claims. Steinfeld also joined in Irving's request for the TRO.[4] At this point, Banco de Colombia (Banco), a foreign corporation which allegedly had become holder of the Certificate immediately after its issuance, moved to intervene as a defendant, asserting that it was entitled to the proceeds.[5] This motion was ultimately granted and Banco counterclaimed against Irving for $1 million, representing the Certificate proceeds.

A second motion to intervene, individually and on behalf of CEI, was made by one Eduardo Ospina Fernandez (Ospina), president, chairman and co-owner (with Harry Steinfeld) of CEI. Ospina sought to strike or amend the answer filed by Steinfeld insofar as it related to CEI.

Shortly before Ospina moved to intervene, Irving moved for partial summary judgment[6] on its claims against CEI, CCC, and Steinfeld, on the basis of the admissions in Steinfeld's answer. Banco also moved for summary judgment dismissing Irving's and Steinfeld's "claims" to the Cer-

---

**2.** The notes were executed by Steinfeld, allegedly acting as agent for CEI. The "signature" of CEI appears on the face of the notes as principal. One of the substantive issues in the case is whether Steinfeld was authorized to incur these debts on CEI's behalf.

**3.** Various of the counts mentioned in the text sought recovery, pursuant to the terms of the promissory notes and guarantee contracts, of attorneys' fees incurred by Irving Trust in attempting to collect the debts.

**4.** This, on the ground that as guarantor of the debts secured by the CEI notes, he would be liable to Irving if CEI failed to pay. He urged that Irving be restrained from honoring the

Certificate, holding the proceeds for an eventual set-off against CEI's debt, thus obviating the need for Irving to look to the guarantors for repayment.

**5.** The injunctive issue was mooted by a stipulation among Irving, Steinfeld and Banco, whereby Irving was to hold the Certificate proceeds pending a judgment or further agreement among the parties.

**6.** Summary judgment was requested against the three defendants on the counts seeking to recover principal and interest due under the notes and the guarantee contracts.

tificate proceeds and sought an order directing Irving to honor the Certificate. Steinfeld opposed Ospina's motions and supported Irving's motions for partial summary judgment.

In response to this battle of motions the state court rendered an opinion and order: (1) granting Irving's motion for partial summary judgment against Steinfeld;[7] (2) denying Irving's motion for partial summary judgment against CEI and CCC; (3) denying Banco's motion for summary judgment; and (4) granting Ospina's motion to intervene and amend CEI's answer.

Ospina received notice of the state court order on March 8, 1978; on March 22, 1978 he filed the petition for removal on his own and CEI's behalf. Pursuant to a stipulation and order of this Court dated April 25, 1978, the attorneys for Steinfeld and CCC were permitted to withdraw as counsel; there has been no substitution of counsel to date. The parties represent that Steinfeld has disappeared and that CCC is for all practical purposes defunct.

## II.

In determining the propriety of a removal several principles must be borne in mind. Because removal ousts a state court of jurisdiction, "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own juris-

diction to the precise limits which the [removal] statute has defined." *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) (*quoting Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)). The trend of both congressional enactment and judicial decision has been to restrict and limit removal jurisdiction. *See generally* Wright, Miller, Cooper, *Federal Practice and Procedure: Jurisdiction § 3721* (hereinafter Wright Treatise). The burden of establishing that a case is within the federal court's removal jurisdiction is on the removing defendant (see cases cited in Wright Treatise, *supra,* at note 65) and the removal statutes are to be strictly construed, *Shamrock Oil & Gas Corp., supra,* 313 U.S. at 108–09, 61 S.Ct. 868. With the caveat that doubts as to federal jurisdiction will be resolved against removal,[8] *Lowe v. T. W. A.,* 396 F.Supp. 9 (S.D.N.Y.1975); *Maybruck v. Haim,* 290 F.Supp. 721 (S.D.N.Y.1968) (per Mansfield, D.J.); *Lance Internat'l, Inc. v. Aetna Cas. & Sur. Co.,* 264 F.Supp. 349 (S.D.N.Y.1967), I turn to an examination of the jurisdictional basis in this case.

## III.

Initially, the parties contend that removal jurisdiction attached by virtue of 28 U.S.C. § 1441(c). That section provides: "(c) Whenever a separate and independent claim or cause of action, which

---

7. Judgment was entered for approximately $530,000 representing principal and interest on CEI's debt which Steinfeld had guaranteed. The question of the amount of attorneys' fees was severed for trial.

8. If removal jurisdiction is doubtful, a remand spares both the courts and the parties the burdens of a litigation that may turn out to have been an exercise in futility, when years later, an appellate court determines that subject matter jurisdiction was lacking *ab initio*. *See American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Further, remanding the doubtful diversity case serves the interest of the state in having its own court interpret and apply state law.

In its recent construction of 28 U.S.C. § 1447(d), which governs the reviewability of remand orders issued under § 1447(c), the Supreme Court said:

"If a trial judge purports to remand a case on the ground that it was removed 'improvidently and without jurisdiction,' his order is not subject to challenge in the court of appeals by appeal, by mandamus, or otherwise." *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976) (quoting 28 U.S.C. § 1447(c)). Section 1447(d), by "prohibit[ing] review of all remand orders issued pursuant to § 1447(c) whether erroneous or not," *id.,* bespeaks Congress' inclination to "err" in favor of remand, not removal. *See id.* at 351, 96 S.Ct. 584; *see also id.* at 355, 96 S.Ct. at 595 (Rehnquist, J., in dissent noting "minimal possible harm [from erroneous remand] to the party attempting removal—who will still receive a trial on the merits before a state court which cannot be presumed to be unwilling or unable to afford substantial justice.").

would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction." 28 U.S.C. § 1441(c).

Irving Trust's claims against CEI would have been removable if sued upon alone, on the basis of diversity jurisdiction. But plaintiff, whose pleadings control, *American Fire & Cas. Co. v. Finn, supra,* 341 U.S. at 13–14, 71 S.Ct. 534, joined its claims against CEI with claims against Steinfeld and CCC. These latter defendants' status as New Yorkers, as is plaintiff's, rendered Irving Trust's claims against them non-removable. Thus, removal jurisdiction attaches under § 1441(c) only if Irving's claims against CEI are "separate and independent" from its claims against the New York defendants within the meaning of the statute.[9]

The parties advance three alternative arguments in support of jurisdiction under § 1441(c): first, that the claims against CEI as maker of the promissory notes are "separate and independent" from the claims against Steinfeld and CCC as guarantors; second, that the claims against the New York defendants are in reality based on their admissions in the state court suit, and not on their guarantee contracts, and for this reason, are "separate and independent"; and third, that plaintiff's claims really relate to the Certificate proceeds, a "separate and independent" controversy from that concerning CEI's debt. For the reasons that follow, these arguments must be rejected.

■ The definitive test for "separate and independent claims" under § 1441(c) was articulated by the Supreme Court in the *American Fire & Cas. Co. v. Finn* case, *supra:*

> "[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." 341 U.S. at 14, 71 S.Ct. at 540.

The "wrong" asserted by Irving in its complaint is the failure of CEI to meet the loan obligations evidenced by its promissory notes. The claims against Steinfeld and CCC arise from their guaranties of that very same debt. It is immaterial, under the *Finn* decision, that the claims are based on separate written instruments, or that Irving pled its claims as separate causes of action against the maker and the guarantors. What is relevant under *Finn* is that Irving could have but one repayment of the debt—be it from the maker or the guarantors—and that the guarantee contracts reveal on their face that they were given in consideration of Irving's loan transactions with CEI. In short, the promissory notes and the guarantee contracts were part and parcel of an interlocked series of transactions whereby CEI received financing from Irving Trust. Out of these transactions, the alleged wrong to Irving arose.

■ At least two district courts, faced with the identical question posed here, have reached the conclusion that claims against the principal obligor on a debt and a guarantor of the same debt are not "separate and independent" within the meaning of § 1441(c) as interpreted by the Supreme Court in *Finn. American Exchange Bank & Trust Co. v. Skills Development of Oklahoma, Inc.,* 426 F.Supp. 408 (W.D.Okl.1977);

---

**9.** It has now been authoritatively established that the "maximum diversity" rule laid down in *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806), is not constitutionally mandated. *State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). To the extent that § 1441(c) permits removal of cases that are not within the statutory grant of original diversity jurisdiction, 28 U.S.C. § 1332, as construed in *Strawbridge,* it must be viewed, at least in part, as an independent grant of jurisdiction over cases of partial diversity. *See Gallagher v. Continental Ins. Co.,* 502 F.2d 827 (10th Cir. 1974); *Twentieth Century-Fox Film Corp. v. Taylor,* 239 F.Supp. 913 (S.D.N.Y.1965); Wright, *Law of Federal Courts* 139; Wright Treatise, *supra,* § 3724, p. 630. Thus, the requirement of a separate and independent otherwise removable claim rises to the level of a jurisdictional prerequisite which cannot be waived so as to confer subject matter jurisdiction on the federal court.

*Chrysler Credit Corp. v. Ralph Williams Gulfgate C.–P.,* 329 F.Supp. 644 (S.D.Tex. 1971). The commentators appear to agree. *See, e. g.,* Wright Treatise, *supra,* § 3724, pp. 629–40. I am persuaded that these cases were correctly decided and that the parties' first argument must be rejected.

The fact that Steinfeld filed an answer in state court admitting his and CCC's guarantor liability does not change this result or the underlying nature of Irving's claims. CEI attempts to distinguish the *Chrysler Credit Corp.* and *American Exchange Bank* cases, *supra,* on the ground that Irving's claims against the guarantors, by virtue of their admissions, no longer depend on the validity of the claims against CEI. Such "dependence" was indeed found in the two cited cases, but "dependence" is not the test under *Finn.* This is clear from the Supreme Court's approving reference to the following language in Moore's Commentary on the U.S. Judicial Code:

> "'But where the plaintiff joins two or more defendants to recover damages for one injury, and even though he charges them with joint and several liability or only several liability, or charges them with liability in the alternative, there is no joinder of separate and independent causes of action within the meaning of § 1441(c). At most a separable controversy is presented where several or alternative liability is alleged, and is no longer the basis for removal.'" *Finn, supra,* 341 U.S. at 14 n. 13, 71 S.Ct. at 540 (quoting Moore's Commentary at 251–52).

I am unpersuaded that the "admissions" require a finding that Irving's claims against CEI are "separate and independent" and this argument is rejected.

█ Finally, I cannot accept Irving's argument that the controversy over the Certificate proceeds is "separate and independent" from the controversy over CEI's debts, and that the claims to the proceeds render the action removable. The "pro-

ceeds controversy" arose solely from Irving's request for an order of attachment to freeze those proceeds for use as security against an ultimate recovery. Irving's right to the proceeds depends entirely upon the validity of its claims against CEI on the promissory notes. Irving did not, in its complaint or other state court pleadings, assert a direct claim against CEI, the removing defendant,[10] with respect to the proceeds. Nor did it, prior to removal, assert a claim against Banco. Its posture in the "proceeds controversy" is one of defense against CEI's and Banco's claims to those funds. It is elementary that the grounds for removal must inhere in the plaintiff's claim, not in a matter of defense or counterclaim. *E. g. Coditron Corp. v. A. F. A. Protective Sys., Inc.,* 392 F.Supp. 158 (S.D. N.Y.1975).

█ Irving's theory, as revealed in its pleadings, which control on the question of removability under § 1441(c), *Finn, supra,* 341 U.S. at 14, 71 S.Ct. 534 (*citing Pullman Co. v. Jenkins,* 305 U.S. 534, 538, 59 S.Ct. 347, 83 L.Ed. 334 (1939)), is that the named defendants and the intervenor defendants were involved together in a scheme to defraud Irving into extending loans to CEI. It is for a single wrong that Irving seeks recovery, that is, CEI's default on its loan obligations. It is to this wrong that its claims against the named defendants, and now the intervenor defendants, are directed. I hold that the plaintiff has asserted no removable claim sufficiently separate and independent from the nonremovable claims to confer jurisdiction under § 1441(c).

█ Even were I to accept any of the arguments in favor of jurisdiction under § 1441(c), there would remain a serious question as to whether the removal was improvident because untimely. Section 1446, entitled "Procedure for removal," provides in pertinent part:

> Secondly, to the extent that Irving has now raised such claims, they are so clearly related to the claims asserted in Irving's complaint as to make a finding of separateness and independence wholly unwarranted.

---

10. Ospina filed the removal petition on his own as well as CEI's behalf. His presence in the litigation does not change my analysis. In the first place, as of the time of removal, Irving had not asserted claims against Ospina directly.

"(b) The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

If the claims against CEI as maker were separate and independent from the claims against CCC and Steinfeld as guarantors, then they were so from the date of Irving's initial pleading in May, 1977. The removal petition was not filed until March 22, 1978. Ignoring the fact that Steinfeld, a CEI officer and its American agent, had notice of the suit by at least June 13, 1977, when he filed his answer, and treating notice to Ospina as the operative notice to CEI, then the latest date from which the 30-day period began to run was October 14, 1977, the date when Ospina moved to intervene. Thus, the removal five months later, on March 22, 1978, was untimely.

If the admissions in Steinfeld's and CCC's answer of June 13, 1977 rendered the claims against them separate and independent from those against CEI, then Ospina must have had notice of that answer by October 14, 1977, when he moved to amend it on CEI's behalf. Again, his removal five months later was untimely.

Finally, if the "proceeds controversy" is separate and independent from the claims against Steinfeld and CCC, the claims in the "proceeds controversy" were fixed, and CEI, through Ospina, had notice of them no later than October 14, 1977, and again the March 22, 1978 removal was too late.

Ospina and CEI contend that the removal was timely in that the petition was filed within 30 days after Ospina received notice of the state court's order granting him leave to intervene. However, they present no argument to convince me that CEI's ability to remove depended on Ospina being a party to the suit.[11] Further, at the time of removal Irving had not asserted any claim against Ospina to which jurisdiction under § 1441(c) could attach. See note 10 supra.

It has been held that the time limitation for removal is not jurisdictional and may be waived.[12] E. g. Powers v. Chesapeake & Ohio R.R., 169 U.S. 92, 98, 18 S.Ct. 264, 42 L.Ed. 673 (1898); Manas y Pineiro v. Chase Manhattan Bank, N.A., 443 F.Supp. 418 (S.D.N.Y.1978); Green v. Zuck, 133 F.Supp. 436 (S.D.N.Y.1955). But, it has also been held that, even when federal jurisdiction clearly exists, the failure to comply with the time limits set by § 1446(b) renders the case "improvidently removed" within the meaning of § 1447(c), and thus subject to remand on the district court's own motion. Robertson v. Ball, 534 F.2d 63, 65 n. 2 (5th Cir. 1976); London v. U. S. Fire Ins. Co., 531 F.2d 257, 259–60 (5th Cir. 1976); Manas y Pineiro, supra, 443 F.Supp. at 421–22.

11. Steinfeld's initial authority to act on CEI's behalf in the conduct of this litigation apparently derived from his position as CEI's vice-president. As such, he "was entrusted with the day-to-day management of CEI." Verified Complaint, Ospina v. Steinfeld, No. 77–1551 (E.D.N.Y.), at ¶ 9 (reproduced as Exhibit D to Ospina's Supplemental Removal Exhibits). However, Steinfeld was removed as vice-president "by directive of CEI's Board of Directors on July 26, 1977." Id. As of that date, CEI was free to pursue its own strategy in the litigation, unconstrained by the actions of its erstwhile officer. I am aware of nothing in law or logic that would have prevented the corporation from taking remedial action in the litigation prior to the time its president, Ospina, was made a formal party to the suit.

12. I must treat the parties' briefs in support of the removal as evidencing their intent to waive any objection to the timing of the removal.

Judge Owen's discussion of this point in the *Manas* case, *supra,* is instructive. Construing § 1447(c), he said:

"On its face this statute appears to address only jurisdictional defects; its legislative history, however, shows that it was intended also to carry forward without change prior statutory law under which this court has discretion to remand improperly removed cases even though jurisdiction is present. . . . Remand in such cases may be ordered, if circumstances warrant, on the court's own motion. . . . And when remand is appropriate, it may be ordered even long after removal." *Id.* at 421 (citations omitted).

Consideration of the three factors relevant to the exercise of such discretion—judicial economy, comity, and prejudice, see *Manas, supra,* 443 F.Supp. at 421—convinces me that this case should be remanded. The litigation concerns only issues of New York state law; considerable progress had been made on the merits of the case in state court; the federal litigation is in essentially the same posture as it was at the time of removal; nor is there any showing that the parties would be prejudiced by a remand at this point. As Judge Mansfield has stated:

"Where . . . a state court invoked by [a] resident plaintiff[ ] is fully competent to adjudicate the issues, procedural statutory conditions precedent to removal should not be disregarded or treated lightly except where fundamental unfairness would ensue." *Maybruck v. Haim, supra,* 290 F.Supp. at 724.

There is no such "fundamental unfairness" here. Accordingly, I hold that the apparent lack of jurisdiction under § 1441(c), coupled with the untimeliness of the removal under § 1446(b), would require that the case be remanded, if § 1441(c) were the sole basis for removal jurisdiction.

## IV.

As my holding above indicates, analysis of § 1441(c) is not wholly dispositive of the jurisdictional issue in this case. As an alternative basis for removal jurisdiction the parties contend that there is actually complete diversity here and thus that removal was proper under §1441(a) which provides:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

The parties argue that the joining as defendants of Steinfeld and CCC, both citizens of New York as is plaintiff, does not defeat diversity jurisdiction under either of two rationales: first, that the New York defendants should be realigned as plaintiffs with Irving; alternatively, that Steinfeld and CCC should be viewed as nominal parties and therefore disregarded in determining the existence of complete diversity.[13]

---

13. Removal under § 1441(a) triggers the requirements of § 1441(b). This latter subsection provides:

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*" 28 U.S.C. § 1441(b) (emphasis added).

The Second Circuit has ruled that in a diversity removal, the requirement that none of the joined and served defendants be residents of the forum state is not jurisdictional in the true sense, stating:

"[W]here only [this requirement is] violated and the plaintiff [makes] no timely request for remand, the situation could be considered to be as if the plaintiff had brought the action in the federal court and, if jurisdiction would have existed in that event, objection on the score of nonremovability would be deemed waived." *Woodward v. D. H. Overmyer Co.,* 428 F.2d 880, 882 (2d Cir. 1970), *cert. denied,* 400 U.S 993, 91 S.Ct. 460, 27 L.Ed.2d 441 (1971).

I need not decide whether this case fits within the *Woodward* reasoning that this statutory precondition to removal may be disregarded in

The seminal realignment case is *Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). There, the Supreme Court restated the principles governing diversity jurisdiction. Directing attention to the "realities of the record," *id.* at 69, 62 S.Ct. 15, the Court reminded that:

"[T]here must exist an 'actual,' 'substantial' controversy between citizens of different states . . . . It is [the duty] of the lower federal courts to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests' exists . . . must be ascertained from the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'" *Id.* (citations omitted).

Applying those principles to the case before it, the *Indianapolis* Court was able to conclude "plainly," that plaintiff and one of the named defendants were "partners in litigation." *Id.* at 74, 62 S.Ct. 15. Because these "partners" were co-citizens of the same state, the Court, harkening to the constitutional and statutory limits on federal judicial power, felt itself compelled to pierce the "illusive artifices" of the pleadings, realign the parties and dismiss for want of diversity jurisdiction.

I am unpersuaded that, under *Indianapolis,* realignment to *create* diversity is appropriate here. The "primary purpose" of Irving's suit is to collect its $500,000 debt. It is immaterial to plaintiff whether repayment is from the guarantors or from CEI. That Irving's interests collide rather than coincide with Steinfeld's is evident from the fact that it seeks to enforce its state court

judgment against Steinfeld in this federal forum. Further, Irving has renewed its prior motion for summary judgment against CCC in this Court. Indeed, Irving concedes, as it must, that it cannot be considered a "partner" of Steinfeld or CCC in this litigation.

■ If the propriety of realignment is tested as of the initiation of the suit, Steinfeld and CCC as guarantors stand in the position of any secondarily liable defendants who seek to avoid their own liability by casting the primarily liable defendant in damages to plaintiff. That one defendant may benefit should plaintiff prevail against another defendant does not provide a sufficient basis for realignment. *Unanue v. Caribbean Canneries, Inc.,* 323 F.Supp. 63 (D.Del.1971).

Testing realignment as of the date of removal, Steinfeld's interests are revealed as even more antagonistic to Irving's. By virtue of a judgment rendered in the District Court for the Eastern District of New York, Steinfeld must indemnify CEI and Ospina for any liability incurred by them to Irving in this suit. *See Ospina v. Steinfeld,* No. 77–1551 (E.D.N.Y. Feb. 28, 1978) (per Nickerson, D. J.).

■ Even were I to find realignment appropriate here at CEI's behest, I would be compelled to hold that the removal was untimely. The pleadings that reveal the alleged unity of interest between Irving on the one hand and Steinfeld and CCC on the other—which would provide the basis for realignment and thus a diversity removal— were Steinfeld's June 13, 1977 answer and affidavit in support of Irving's request for

some circumstances, since absent realignment or disregard of the New York defendants, the case is not removable under § 1441(a), without regard to whether removal was also improvident under § 1441(b).

A further so-called nonjurisdictional defect in the removal is present. The general rule in removal under § 1441(a) is that all defendants who have been served in the state court proceeding must join in the removal petition. *E. g. Chicago, Rock Isl. & Pac. Ry. Co. v. Martin,* 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *Bradford v. Harding,* 284 F.2d 307, 309 (2d Cir.

1960); *Committee of Interns v. N.Y. Labor Rel. Bd.,* 420 F.Supp. 826, 832 (S.D.N.Y.1976). Assuming I would realign or disregard the New York defendants and thus dispense with the need for their joinder in the removal petition, see *Committee of Interns, supra,* 420 F.Supp. at 832–33; *First Nat'l Bank v. Mottola,* 302 F.Supp. 785 (D.Ill.1969), the fact remains that Banco, properly joined and served as an intervenor defendant at the time of removal, also did not join in the petition. For this reason alone the removal was improvident. *Committee of Interns, supra,* 420 F.Supp. at 832–33.

an injunction. Treating the date of Ospina's motion to intervene on CEI's behalf as the operative date of notice to CEI of the "new" removal basis, the removal on March 22, 1978, was untimely under 28 U.S.C. § 1446(b).

█ Insofar as Ospina seeks realignment to support removal on his own behalf, he runs afoul of the rule recently stated by District Judge Marshall:

> "Only when it is shown that the plaintiff fraudulently misjoined the parties in an effort to deprive the federal courts of jurisdiction will a federal court realign the parties at the behest of an intervenor." *Baker v. Nat'l Blvd. Bank,* 399 F.Supp. 1021, 1023 (N.D.Ill.1975).

There is not and cannot be any allegation that Irving collusively joined Steinfeld and CCC as defendants to defeat federal jurisdiction. It is perfectly plain that Irving, who could not have resorted to a federal forum initially, is quite content to have the action in federal court at this point without the necessity of voluntarily dismissing its claims against the nondiverse defendants. *See Martropico Compania Naviera, S. A. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina),* 428 F.Supp. 1035 (S.D.N.Y.1977); *Hearst Corp. v. Shopping Center Network, Inc.,* 307 F.Supp. 551 (S.D.N.Y.1969); *Squibb-Mathieson v. St. Paul Ins. Co.,* 238 F.Supp. 598 (S.D.N.Y. 1965); *Gerety v. Inland Newspaper Representatives,* 152 F.Supp. 31 (S.D.N.Y.1957). *See generally* Wright Treatise, *supra,* Jurisdiction § 3723 at pp. 590–99. Irving is thus in the untenable position of urging realignment or disregard of Steinfeld and CCC for jurisdictional purposes while at the same time seeking enforcement against Steinfeld and judgment against CCC to advance its substantive interests.

At the time of the removal in this case both Steinfeld and CCC were represented by counsel and were parties to the litigation. Less than one month earlier, they were sufficiently "real" to Ospina, CEI, and District Judge Nickerson as to warrant the imposition of monetary liability—and the granting of declaratory and injunctive relief—against them. That they remain real parties in plaintiff's estimation is evidenced by the fact that Irving continues to invoke the powers of this Court to establish and enforce its rights against them. I cannot conclude that they should be disregarded for the purposes of determining diversity jurisdiction.[14]

### V.

For the reasons stated in parts III and IV of this opinion, it appears that this case was removed improvidently and without jurisdiction. Accordingly, the case is remanded. No costs are imposed.

It is So Ordered.

---

14. The cases cited by Ospina and CEI do not compel a finding that Steinfeld and CCC are merely "nominal parties" for jurisdictional purposes. For example, in *Salem Trust Co. v. Manufacturer's Finance Co.,* 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628 (1924), it was the depositary of the fund in suit, who had no interest in the outcome of the litigation, that was disregarded for the purpose of determining diversity. Here, neither Steinfeld nor CCC are "stakeholders" without any real interest in the suit. In *Stonybrook Tenants Assn., Inc. v. Alpert,* 194 F.Supp. 552 (D.Conn.1961), the corporate alter egos of the individual defendants, which had neither assets nor liabilities, had been liquidated prior to suit, and were in the process of formal dissolution, were disregarded as merely nominal. In this case, the argument is for piercing the corporate veil of CCC (which apparently retains formal corporate existence and continues to have corporate liabilities) to reach Steinfeld and then disregarding Steinfeld entirely for jurisdictional purposes. Finally, in the cited cases of *Bradley v. Maryland Cas. Co.,* 382 F.2d 415 (8th Cir. 1967) and *Wallis v. Southern Silo Co., Inc.,* 369 F.Supp. 92 (N.D. Miss.1973), the issue was whether certain defendants should be disregarded for the purpose of determining who should have joined in the removal petition. In the *Bradley* case, third party defendants, against whom plaintiff had raised no claim, who had removed the case prior to an earlier remand, and who had entered into a valid settlement with the third party plaintiff, were disregarded for this nonjurisdictional purpose. In *Wallis* the failure to join an adjudicated bankrupt in the removal petition was disregarded.